## Commonwealth *v.* Turner, Appellant.

Argued November 27, 1972. Before JONES, C. J., EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

*Daniel C. Barrish,* Assistant Public Defender, for appellant.

*Stewart J. Greenleaf,* Assistant District Attorney, with him *J. David Bean,* Assistant District Attorney, *William T. Nicholas,* First Assistant District Attorney, and *Milton O. Moss,* District Attorney, for Commonwealth, appellee.

OPINION BY MR. JUSTICE NIX, March 25, 1974:

Appellant was tried before a judge and jury on charges of burglary, larceny, and receiving stolen goods. A demurrer to the evidence was sustained on the charges of burglary and receiving stolen goods, and the jury found appellant guilty of larceny. Appellant's post-trial motions were denied and he was sentenced to from eighteen months to five years imprisonment. On appeal, the Superior Court affirmed, *per curiam. Commonwealth v. Turner,* 221 Pa. Superior Ct. 753, 289 A. 2d 219 (1972). We granted allocatur and we now reverse.

The instant charges stem from the theft of blank checks from the Arch T. Flower Co. of Wyndmoor, Pennsylvania. The Commonwealth's evidence showed that in mid-February, 1968, it was discovered that checks were missing from the Flower Company and that one of the missing checks had been cashed at a local department store. At the time the stolen check was tendered for payment a photo was taken of both the check and the person seeking to cash the check, and an officer of the Flower Company identified the person in that photo as the appellant, a former employee of the company. On March 29, 1968, armed with this information, the police obtained a search warrant for appellant's apartment and, upon executing that warrant, they discovered six of the stolen checks.

Appellant raises several assignments of error, but the only one that need concern us here is his attack on the validity of the "presumption of larceny from the unexplained possession of recently stolen goods." Unfortunately, courts and legal writers have propounded a plethora of definitions in their attempts to describe the basic characteristic of a presumption. In an attempt to minimize the confusion that may arise from the use of the term we will define with specificity the particular evidentiary device that we are here considering.

It must first be recognized that we are not dealing with a legal presumption. "A legal presumption is the conclusion of the law itself of the existence of one fact from others in proof, and is binding on the jury, prima facie till disproved, or conclusively, just as the law adopts the one or the other as the effect of proof." *Tanner v. Hughes*, 53 Pa. 289, 291 (1866). Mr. Justice AGNEW classified the type of evidentiary principle that we are now considering as a presumption of fact and defined it as merely "a natural probability". *Tanner v. Hughes, supra.* In making the same distinction, Mr. Justice EAGEN stated: "The main difficulty with this position is that appellant confuses an inference with a rebuttable presumption. A rebuttable presumption is a means by which a rule of substantive law is invoked to force the trier of fact to reach a given conclusion, once the facts constituting its hypothesis are established, absent contrary evidence. *An inference is no more than a logical tool enabling the trier of fact to proceed from one fact to another, if the trier believes that the weight of the evidence and the experiential accuracy of the inference warrant so doing." Commonwealth v. Shaffer*, 447 Pa. 91 at 105-106, 288 A. 2d 727, 735 (1972). McCormick on Evidence states: "Certainly the description of a presumption as a rule that, at a minimum, shifts the burden of producing evidence is to

be preferred, . . . Inferences that a trial judge decides may reasonably be drawn from the evidence need no other description, even though the judge relies upon precedent or a statute rather than his own experience in reaching his decision. In most instances, the application of any other label to an inference will only cause confusion." McCormick, Evidence, 803-4 (2d ed. 1972).[1]

The authors proceeded to reason that a presumption as they defined the term would be offensive to the presumption of innocence in criminal cases.[2] They maintain that although legal draftsmen still retain the term presumption in criminal law, it in fact refers only to a standardized inference. Thus, the total effect of the type of device at issue in this case is to permit the finder of fact to accept the existence of the presumed fact but not require them to do so even in absence of contrary evidence.

The value of such a standardized inference is that it permits the fact-finder to rely upon precedent to find the relationship between the proved facts and the fact to be inferred rather than to rely solely on their collective experience. In evaluating the need for and propriety of a standardized inference we should weigh two distinct factors: (1) whether, in light of present day experience, the proven facts bear sufficient relation-

---

[1] In his first edition of this text, McCormick used the term "permissive presumption" to describe this rule of law. It was noted that the concept was also described in opinions as a "presumption of fact". McCormick, *supra*, 804, n. 31.

[2] "A true shifting of the burden of producing evidence to the defendant in a criminal case would mean that the court would be compelled to direct the jury to find against him with regard to the presumed fact if he fails to introduce sufficient proof on the issue . . ., a directed verdict or a peremptory ruling against the accused in a criminal case, even as to a single element of the crime, is abhorrent to the criminal law." Id. p. 804.

ship to the fact to be inferred;[3] and (2) whether the rational connection inherent in the inference is of such a nature that standardization is desirable.

In evaluating the inference in the case at bar, historical acceptance of the nexus between recent possession of stolen property and the identity of the thief,[4] while persuasive, is not conclusive. We must still determine whether present-day experience continues to attest to the relationship between the facts proved and the fact to be inferred. The advent of densely populated communities, revolutionary advances in communication and transportation, the increased mobility which produced a more transient pattern of living for large segments of our society, and the myriad of other changes in the nature and character of our society have combined to create the need to redefine the term

---

[3] In assessing this first factor, we must at least apply a "more-likely-than-not" standard. *Turner v. United States*, 396 U.S. 398 (1970) ; *Leary v. United States*, 395 U.S. 6 (1969). Cf. *Barnes v. United States*, 412 U.S. 837 (1973). However, even though *Turner* and *Leary* did not expressly mandate a "beyond a reasonable doubt" standard, it is unquestioned within this jurisdiction that circumstantial evidence, while acceptable, must meet the reasonable doubt standard. *United States v. Hamilton*, 457 F. 2d 95 (3d Cir. 1972) ; *United States v. Blair*, 456 F. 2d 514 (3d Cir. 1972) ; *Commonwealth v. Amato*, 449 Pa. 592, 297 A. 2d 462 (1972) ; *Commonwealth v. Cimaszewski*, 447 Pa. 141, 288 A. 2d 805 (1972) ; *Commonwealth v. Bartlett*, 446 Pa. 392, 288 A. 2d 796 (1972). Therefore, in a criminal case where the fact to be inferred is the guilt of the crime charged or one of the elements of that crime, any standard less than reasonable doubt would be repugnant to the interpretation of the presumption of innocence as understood in this jurisdiction. See, *Commonwealth v. Bonomo*, 396 Pa. 222, 151 A. 2d 441 (1959).

[4] See, e.g., *Wilson v. United States*, 162 U.S. 613 (1896) ; *Commonwealth v. Myers*, 1 Add. 320 (1796) ; *Commonwealth v. Williams*, 29 Pa. 102 (1857) ; *Commonwealth v. Newman*, 276 Pa. 534, 120 A. 474 (1923) ; *Commonwealth ex rel. Chatary v. Nailon*, 416 Pa. 280, 206 A. 2d 43 (1965).

"recent possession" in an attempt to preserve its rational connection to the identity of the thief. Recent decisions have attempted to formulate criteria for the term "recent possession"[5] that would correspond to a period of time within which a thief could not have had the opportunity to divest himself of possession. See, *Commonwealth v. McFarland,* 452 Pa. 435, 308 A. 2d 592 (1973) ; *Commonwealth v. Shaffer,* 447 Pa. 91, 288 A. 2d 727 (1972).[6]

As a result of these developments, we have moved away from the generally understood meaning of the words *recent* and *possession* and developed a term of art which represents a judgment that the factual circumstances in a given case surrounding the possession justify the conclusion that the possessor is in fact the thief. Because each case is dependent upon the peculiar circumstances involved, it is difficult to perceive how earlier precedent can serve any meaningful purpose. Thus, one of the basic considerations for establishing a standardized inference is not present.

In view of the absence of any real value of precedent in making the judgment of "recent possession" and also a recognition that this judgment cannot be made without a determination of the relationship between

---

[5] Although not an issue under the facts of this case, the term "possession" has received its share of attention in the recent decisions of this Court. See, *Commonwealth v. Davis,* 444 Pa. 11, 280 A. 2d 119 (1971) ; *Commonwealth v. Russell,* 444 Pa. 4, 279 A. 2d 185 (1971) ; *Commonwealth v. Tirpak,* 441 Pa. 534, 272 A. 2d 476 (1971) ; *Commonwealth v. Whitner,* 444 Pa. 556, 281 A. 2d 870 (1971) ; *Commonwealth v. Townsend,* 428 Pa. 281, 237 A. 2d 192 (1968)

[6] The suggested criteria are: "The lapse of time between the crime and the discovery of the property; the type and kind of property; the amount and volume of the property; and the ease in which it may be assimilated into trade channels." *Commonwealth v. McFarland, supra* at 439, 308 A. 2d at 594; *Commonwealth v. Shaffer, supra* at 109, 288 A. 2d at 737.

the time of possession and the likelihood that the possessor is the thief, the utility of the inference is subject to serious question.

It is difficult to find justification for directing the jury's attention away from the ultimate determination by employing the use of an evidentiary device which fails to simplify the inquiry and in many instances requires the same judgment as would be required if the fact-finder addressed the ultimate issue.

The evidence in this case illustrates the disutility of the evidentiary device in question. The use of the inference served to segregate the fact that appellant had been found in possession of the stolen checks prior to the discovery of the theft by the owner from the other evidence offered to establish the guilt of the accused. It is this failing that requires the award of a new trial. We are satisfied that a finding of guilt would have been justified if it were based on all of the evidence produced by the Commonwealth.[7] Relying on the inference, the trial court erroneously, under the facts of this case, instructed the jury that they could infer guilt from the evidence of the appellant's possession alone. Proof that the appellant was in possession of a portion of the stolen goods four to six days prior to the discovery of the loss, in absence of any proof of the actual time of the taking, fails to provide the rational connection to the crime charged that would overcome the presumption of innocence and establish guilt beyond a reasonable doubt. Thus, this case provides an excellent

---

[7] In addition to the evidence of "recent possession" the Commonwealth introduced evidence to prove that the thief was a person who was aware of the existence and the location of these checks prior to the taking. They also showed that the person taking the checks was familiar with the names of the officers authorized by the Company to sign them. This evidence, coupled with the evidence of possession and the appellant's prior association with the business, would warrant the finding of guilt.

example where the ill-advised use of the inference rather than facilitating proof of larceny accomplished the opposite result. Clearly, the most efficacious approach would have been to instruct the jury to review all of the evidence and determine whether the Commonwealth had established appellant's guilt of larceny.

Judgment of sentence reversed and a new trial is granted.

Mr. Justice EAGEN concurs in the result.

Mr. Justice O'BRIEN concurs in the result.

Mr. Justice POMEROY concurs in the result.

Mr. Chief Justice JONES dissents.

---

CONCURRING OPINION BY MR. JUSTICE ROBERTS:

Without hesitation, I concur in the result reached by the majority today. And I wholeheartedly agree with the majority's opinion to the extent that it holds unconstitutional[1] a presumption or inference[2] permit-

---

[1] This conclusion is compelled by the due process clause. U.S. Const. amend. XIV. The same result would be reached under article I, section 9 of the Pennsylvania Constitution.

[2] I am constrained also to comment on the majority's treatment of the differences between presumptions and inferences. As the majority knowingly explains, there are several reasons in logic and history for treating presumptions differently from inferences. However, in my view, there is no difference between them when the constitutionality of their use is tested.

The notion that there is any distinction between presumptions and inferences for the purpose of determining whether their use affords an accused due process was repudiated by *Barnes v. United States*, 412 U.S. 837, 93 S. Ct. 2357 (1973). There, the United States Supreme Court held constitutional the inference of guilty possession from proof of possession of recently stolen checks, because the proven facts were "sufficient to enable the jury to find beyond a reasonable doubt that petitioner knew the checks were stolen." Id. at 845, 93 S. Ct. at 2363. In reaching its result, the Court considered the teachings of its earlier cases without regard to whether they dealt with presumptions or inferences. Id. at 841-44, 93 S. Ct. at 2360-62.

ting the conclusion that either proof of the crime charged or one of its elements has been established, unless the presumption or inference ensures that the presumed or inferred fact will follow beyond a reasonable doubt from the proved facts.[3]

---

It is true that the result in *Commonwealth v. Shaffer*, 447 Pa. 91, 288 A.2d 727 (1972), was justified on an alternate ground that, in the view of the majority, inferences required different constitutional scrutiny than rebuttable presumptions. Thus, *Commonwealth v. Owens*, 441 Pa. 318, 271 A.2d 230 (1970), and the "more-likely-than-not" test were inapplicable. The view that presumptions and inferences are to be given different constitutional treatment was later rejected in *Commonwealth v. MacFarland*, 452 Pa. 435, 439, 308 A.2d 592, 594 (1973).

[3] In *Leary v. United States*, 395 U.S. 6, 89 S. Ct. 1532 (1969), the Supreme Court did not "reach the question whether a criminal presumption which passes muster when so judged [by the more-likely-than-not standard] must also satisfy the criminal 'reasonable doubt' standard if proof of the crime charged or an essential element thereof depends upon its use." Id. at 36 n.64, 89 S. Ct. at 1548, n.64. See *Barnes v. United States*, 412 U.S. 837, 841-44, 93 S. Ct. 2357, 2361-62 (1973) ; *Turner v. United States*, 396 U.S. 398, 404-05, 90 S. Ct. 642, 646 (1970). See also *Commonwealth v. Owens*, 441 Pa. 318, 323 n.4, 271 A.2d 230, 232 n.4 (1970).

Nevertheless, a close reading of recent decisions of the United States Supreme Court dealing with inferences reveals that the Court has decided cases consistently with a reasonable doubt standard. *Barnes*, supra; *Turner*, supra; *Leary*, supra; *United States v. Romano*, 382 U.S. 136, 86 S. Ct. 279 (1965) ; *United States v. Gainey*, 380 U.S. 63, 85 S. Ct. 754 (1965). See *Tot v. United States*, 319 U.S. 463, 63 S. Ct. 1241 (1943). Cf. W. LaFave & A. Scott, Handbook on Criminal Law 149 (1972).

In both *Barnes* and *Turner*, the Supreme Court did not conclude the inferences in question were constitutional until satisfied that the standard of "beyond a reasonable doubt" was met. It is true that in striking down inferences, the Supreme Court has not used a reasonable doubt standard. E.g., *Leary; Romano; Tot;* see *Turner*. For two reasons, however, the rationale of these inference cases is not here controlling. First, the approach of the Court when testing the constitutionality of inferences has developed over time. Each decision has added more precision to the articulation of its

My approach is only slightly different. In this criminal case, the inference used by the trial court[4] sought

standard. Those cases employing standards other than beyond a reasonable doubt were decided before either *Turner* or *Barnes*. Second, the earlier tests of "rational connection" or "more likely than not" are clearly less rigorous than a reasonable doubt standard. Compare, *Romano; Gainey; Tot* (all using "rational connection" test), with *Leary* ("more likely than not" standard). See *Turner*. Therefore, if an inference cannot pass muster under one of these less stringent tests, then it must of necessity fail when measured by the reasonable doubt standard. See *Barnes v. United States*, supra at 841-44, 845-46, 93 S. Ct. at 2361-62, 2363 (1973).

*United States v. Gainey*, supra, is distinguishable. It was an early case in the development of the Supreme Court's thinking with respect to the constitutionality of presumptions and inferences. There, the Court held constitutional a statutory inference that permitted presence at the site of an illegal still to be sufficient evidence that the person present was "carrying on" the business of illegal distillation. The majority had little difficulty reaching its result, since the offense was "one of the most comprehensive of the criminal statutes designed to stop the production and sale of untaxed liquor." Id. at 67, 85 S. Ct. at 757. The Supreme Court did not utilize either a "more-likely-than-not" or a "reasonable doubt" standard, but instead, following *Tot v. United States*, 319 U.S. 463, 63 S. Ct. 1241 (1943), concluded that there was a rational connection between the fact presumed and the facts proved. In view of the embracive nature of the criminal statute in *Gainey*, the statutory inference there might well satisfy today's more rigorous reasonable doubt standard. See *Barnes; Turner*.

The teaching of those cases in which the Supreme Court held inferences invalid, as measured by a standard other than reasonable doubt, serves only as the first step toward deciding whether an inference is valid. If proof of a crime charged or an essential element of a crime depends upon an inference, then that inference must guarantee beyond a reasonable doubt that the inferred fact follows from the proved facts.

[4] The trial court instructed the jury in the following fashion:

"The unexplained possession of recently stolen property by the defendant [appellant], if you find as a fact that he did have possession thereof, can give rise in the jury's mind to an inference that he was the thief, but such is an inference of fact and not of

to establish from appellant's unexplained possession of recently stolen goods that appellant was the thief. In other words, the inference was used to show that appellant was guilty of larceny, the crime charged. The constitution requires that no person be convicted of a crime unless he is proved guilty beyond a reasonable doubt. *In re Winship,* 397 U.S. 358, 361-65, 90 S. Ct. 1068, 1071-73 (1970).[5]

Here, as the majority concludes (and I agree), the inference that the possessor of recently stolen property is the thief does not satisfy the reasonable doubt standard.[6] Because appellant's conviction rests upon use of

law, and you must pass upon it as part of the evidence against the defendant.

"You cannot draw such an inference that the defendant was the thief unless you can conclude, with substantial assurance, that such inferred fact is more likely than not to flow from the proof of his possession of the checks."

From this instruction the jury could have believed it permissible to convict appellant if satisfied that it was only "more likely than not" that appellant was the thief. Although the trial court did admonish the jury that it was compelled to find appellant guilty beyond a reasonable doubt, the challenged instruction quite possibly could have induced the jury to convict on a lesser standard of proof. The practical effect of the challenged instruction was to submit the case to the jury on an alternative theory. In such a case, if any of the theories are unconstitutional, the judgment of sentence must be reversed. See *Leary v. United States,* 395 U.S. 6, 31-32, 89 S. Ct. 1532, 1545-46 (1969) ; *Stromberg v. California,* 283 U.S. 359, 51 S. Ct. 532 (1931).

[5] "[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship,* 397 U.S. 358, 364, 90 S. Ct. 1068, 1073 (1973). See note 3 of majority opinion.

[6] See *Commonwealth v. Shaffer,* 447 Pa. 91, 116-17, 288 A.2d 727, 741 (1972) (POMEROY, J., concurring and dissenting). The inference that the possessor of recently stolen goods was the thief of those goods was at issue in *Shaffer.* I agree with the views stated there by Mr. Justice POMEROY. He found "it difficult to believe

128

an unconstitutional inference, the judgment of sentence must be reversed and a new trial granted.

---

... that it is more likely than not that the possessor was himself ... the thief, or that ... [the inference] is the equivalent of proof beyond a reasonable doubt of the elements of [larceny]." Id. at 117, 288 A.2d at 741 (concurring and dissenting opinion). If an inference cannot conform to the requirements of the less stringent "more-likely-than-not" test, then it must necessarily fail to satisfy the reasonable doubt standard. See note 3 supra.