Commonwealth *v.* DiFrancesco et al., Appellants.

Argued January 8, 1974; reargued April 22, 1974. Before JONES, C. J., EAGEN, O'BRIEN, ROBERTS, POMEROY and NIX, JJ.

reargument refused December 17, 1974.

*Myron L. Markovitz,* with him *William W. Stainton, Andrew J. Gleason, Gleason, DiFrancesco, Shahade & Markovitz* and *Arnold, Bricker, Beyer & Barnes,* for Samuel R. DiFrancesco, Jr., appellant.

*William W. Stainton,* with him *John W. Beyer,* and *Arnold, Bricker, Beyer & Barnes,* for John H. Buckwalter, Anthony L. Steckel, Jr., and Fred A. Douts, appellants.

*J. Andrew Smyser,* Deputy Attorney General, with him *Israel Packel,* Attorney General, *Ronald L. Buckwalter,* Assistant District Attorney, and *D. Richard Eckman,* District Attorney, for Commonwealth, appellee.

OPINION BY MR. JUSTICE POMEROY, October 16, 1974:
These four consolidated appeals challenge the constitutionality of section 624.1(c) of The Vehicle Code, which provides that if the amount of alcohol by weight in the blood of a person accused of driving under the influence of intoxicating liquor is shown by chemical analysis to be ten one-hundredths percent (.10%) or more, "it shall be presumed that the defendant was under the influence of intoxicating liquor".[1]

---

[1] Act of April 29, 1959, P.L. 58, §624.1, as amended by the Act of July 31, 1968, P.L. 758, No. 237, §1, 75 P.S. §624.1(c).

Section 624.1 of The Vehicle Code reads in part:

"(b) In any summary proceeding or criminal proceeding in which the defendant is charged with driving a motor vehicle or tractor while under the influence of intoxicating liquor the amount of alcohol in the defendant's blood, as shown by a chemical analysis of his breath, his blood, or his urine, which analysis was conducted with equipment approved by the secretary and operated by qualified personnel, shall be admissible in evidence.

"(c) If chemical analysis of a person's breath, blood or urine shows—

"(1) That the amount of alcohol by weight in the blood of the person tested is five one-hundredths (0.05) percent or less, it shall be presumed that the person tested was not under the influence of intoxicating liquor.

"(2) That the amount of alcohol by weight in the blood of the person tested is in excess of five one hundredths (0.05) percent but less than ten one-hundredths (0.10) percent, this fact shall not give rise to any presumption that the person tested was or was not under the influence of intoxicating liquor, but this fact may be considered with other competent evidence in determining the guilt or innocence of the person tested.

"(3) That the amount of alcohol by weight in the blood of the person tested is ten one-hundredths (0.10) percent or more, it shall be presumed that the defendant was under the influence of intoxicating liquor.

"(d) The foregoing provisions of this section shall not be construed as limiting the introduction of any other competent evidence bearing upon the question whether or not the defendant was under the influence of intoxicating liquor.

Appellants were each convicted by a jury of operating a vehicle while under the influence of intoxicating liquor. Results of an analysis of blood taken from appellant Steckel shortly after his arrest, showing a blood-alcohol percentage of 0.21 by weight, were introduced at his trial. Breathalyzer test results were introduced at the trials of appellants DiFrancesco, Douts, and Buckwalter, showing blood-alcohol percentages of 0.16, 0.19 and 0.21, respectively. The court's instructions to the jury concerning these test results were substantially identical. In each case, the trial judge recited the pertinent portions of section 624.1. Exceptions were taken to these instructions on the basis that the statute infringed upon the constitutional rights of the defendants. On appeal, the Superior Court affirmed the judgments of sentence per curiam. We granted allocatur, limited to the question of the constitutional validity of the inculpatory inference authorized by the statute.

At the outset, we note that nothing in subsection (c) of section 624.1 relieves the Commonwealth of its burden of laying a proper foundation for the introduction of test results showing the amount of alcohol in the defendant's blood.[2] Nor does the statute compel a verdict of guilty on the basis of such test results alone. Subsection (d) of section 624.1 expressly provides that

"(e) Upon the request of the person tested, the results of any chemical test shall be made available to him or to his attorney."

Subsection (c) of §624.1 is based on §11-902(b) of the Uniform Vehicle Code (1968 revision). A substantial majority of the states have enacted statutes based on this section of the Uniform Vehicle Code. See National Committee on Uniform Traffic Laws and Ordinances, Traffic Laws Annotated 640-642 (1972).

[2] Subsection (a) of §624.1 provides in part that "the test is [to be] administered by qualified personnel and with equipment approved by the secretary [of transportation] . . . . Qualified personnel means a physician or a police officer who has received training in the use of such equipment in a training program approved by the secretary."

"[t]he foregoing provisions of this section shall not be construed as limiting the introduction of any other competent evidence bearing upon the question whether or not the defendant was under the influence of intoxicating liquor". The defendant himself may produce such evidence, but there is no burden on him to do so.[3]

---

[3] What the statute refers to as a "presumption" is, strictly speaking, only a standardized permissible inference. Although the terms "inference" and "presumption" are often used interchangeably, this Court has adhered to the prevailing view among legal commentators, and drawn a distinction between these two concepts. See *Commonwealth v. Turner*, 456 Pa. 116, 317 A.2d 298 (1974) ; *Commonwealth v. Shaffer*, 447 Pa. 91, 105-106, 288 A.2d 727, 735 (1972). *See generally* McCormick's Handbook of the Law of Evidence §342 ff. (2d ed. E. Cleary 1972) ; 9 J. Wigmore, Treatise on Evidence §2490 ff. (3d ed. 1940). According to this view, an inference is merely a logical tool which permits the trier of fact to proceed from one fact to another. A presumption, on the other hand, is a procedural device which not only permits an inference of the "presumed" fact, but also shifts to the opposing party the burden of producing evidence to disprove the presumed fact. Failure to meet this burden of production will normally result in binding instructions on the issue of the presumed fact's existence in favor of the party invoking the presumption. But the notion of a directed verdict against a criminal defendant is contrary to accepted tenets of criminal justice. Placing the burden of production on a defendant under the threat of such a sanction would run afoul of the presumption of innocence, see *Commonwealth v. Bonomo*, 396 Pa. 222, 229-230, 151 A.2d 441, 445-46 (1959), as well as the defendant's privilege of declining to testify. Thus, where the presumed fact comprises an element of the crime charged, the inference authorized by a presumption can never be compelled by the court. See generally *Commonwealth v. Turner*, 456 Pa. 116, 317 A.2d 298 (1974).

From this perspective, it is apparent that virtually all so-called "criminal presumptions" are really no more than permissible inferences. Subsection (c) (3) of §624.1 is no exception. Our lower courts have so construed it; see, e.g., *Commonwealth v. Thompson*, 27 Som. 241 (1971), *aff'd* 221 Pa. Superior Ct. 824, 292 A.2d 425 (1972), allocatur refused, which contains a thorough and scholarly discussion of the question. See also, *People v. Guilford*, 20 App. Div. 2d 192, 245 N.Y.S.2d 781 (1964) ; cf. *State v. Cooke*, 270 N.C. 644, 155 S.E.2d 165 (1967).

In any case, if on the basis of all the evidence the jury entertains a reasonable doubt as to whether a defendant was under the influence of intoxicating liquor, they are duty-bound to acquit. All that the statute does is specify a quantum of evidence which is legally sufficient to sustain proof of this element of the crime. So long as the connection between the test results and the "presumed" facts of being under the influence of intoxicating liquor meets the required standard of rationality under the due process clause, the statute passes constitutional muster.

In *Tot v. United States,* 319 U.S. 463, 467-68, 87 L.Ed. 1519, 1524 (1943), the United States Supreme Court singled out the so-called "rational connection" standard as governing the validity of statutory presumptions under the requirements of constitutional due process: ". . . a statutory presumption cannot be sustained if there be no rational connection between the fact proved and the ultimate fact presumed, if the influence of the one from proof of the other is arbitrary because of lack of connection between the two in common experience. This is not to say that a valid presumption may not be created upon a view of relation

Of course a permissible inference may affect the burden of production in the practical sense that it increases the risk that a defendant who fails to produce countervailing evidence may suffer an adverse verdict. In this sense, the evidence forming the basis of a statutory inference functions no differently from the other evidence in the prosecution's case: the stronger the evidence against a defendant, the greater will be the pressure on him to come forward with evidence in his own defense. It is in this loose, practical sense that courts and legislatures occasionally speak of shifting a burden to the defendant in a criminal case. See, e.g., *Barnes v. United States,* 412 U.S. 837, 845-46, nn. 9, 11, 37 L.Ed.2d 380, 387-88 (1973) ; *Tot v. United States,* 319 U.S. 463, 469-70, 87 L.Ed. 1519, 1525 (1943) ; *DeWoody v. Superior Court,* 8 Cal. App. 3d 52, 56-7, 87 Cal. Rptr. 210, 212-13 (1970), construing California Vehicle Code §23126.

broader than that a jury might take in a specific case. But where the inference is so strained as not to have a reasonable relation to the circumstances of life as we know them it is not competent for the legislature to create it as a rule governing the procedure of the courts." (Footnotes omitted.) Subsequent Supreme Court decisions have refined this standard as it applies to legislatively authorized inferences in criminal cases.[4] In *Leary v. United States,* 395 U.S. 6, 36, 23 L.Ed.2d 57, 82 (1969), the Court remarked: "The upshot of Tot [and subsequent cases] is, we think, that a criminal statutory presumption must be regarded as 'irrational' or 'arbitrary,' and hence unconstitutional, unless it can at least be said with substantial assurance that the presumed fact is more likely than not to flow from the proved fact on which it is made to depend." Because the statutory presumption under review in *Leary* did not meet this minimum test, the Court declined to reach "the question whether a criminal presumption which passes muster when so judged must also satisfy the criminal 'reasonable doubt' standard if proof of the crime charged or an essential element thereof depends upon its use". *Id.* at 395 U.S. 36 n.64, 23 L.Ed.2d 82. While the United States Supreme Court has not yet directly addressed this question, there are unmistakable intimations in its later decisions that where the inferred fact comprises an essential element of the crime charged, the inference must satisfy the reasonable doubt standard. See *Turner v. United States,* 396 U.S. 398, 24

---

[4] *United States v. Gainey,* 380 U.S. 63, 13 L.Ed.2d 658 (1965); *United States v. Romano,* 382 U.S. 136, 15 L.Ed.2d 210 (1965); *Leary v. United States,* 395 U.S. 6, 23 L.Ed.2d 57 (1969); *Turner v. United States,* 396 U.S. 398, 24 L.Ed.2d 610 (1970).

Read together, these cases indicate that for constitutional purposes, the Court draws no distinction between "inferences" and "presumptions" in the field of criminal legislation.

L.Ed.2d 610 (1970); *Barnes v. United States,* 412 U.S. 837, 37 L.Ed.2d 380 (1973).[5]

In *Barnes,* the Court's most recent pronouncement in this area, Mr. Justice POWELL remarked: "To the extent that the 'rational connection,' 'more likely-than-not,' and 'reasonable doubt' standards bear ambiguous relationships to one another, the ambiguity is traceable in large part to variations in language and focus rather than to differences of substance." 412 U.S. at 843, 37 L.Ed.2d at 386. However tenuous the differences between these standards may be, we are of the opinion that the constitutionality of a standardized inference invoked to establish an essential element of the crime charged must be judged by the reasonable doubt standard.[6] This standard is an integral part of criminal due process, *In re Winship,* 397 U.S. 358, 364, 25 L.Ed. 2d 368, 375 (1970), and although "in the judicial assess-

---

[5] The inferences which were held constitutional in *Turner* and *Barnes* were found to satisfy the reasonable doubt standard.

In *Barnes,* the Court addressed the question whether possession of recently stolen goods can constitutionally support the inference, long-recognized under the common law, that the possessor knew the goods were stolen. The opinion of the Court makes it clear that identical due process standards apply, regardless of whether the challenged inference is authorized by statute or based on common law precedents. *Id.* at 412 U.S. 844-45, 37 L.Ed.2d 387. Dean McCormick's successors have classified both sorts of inferences under the general heading of "standardized inferences", in contradistinction to inferences which arise solely from the application of ordinary processes of reasoning to the facts of a particular case. McCormick's Handbook of the Law of Evidence, §342 (2d ed. E. Cleary 1972). It is in this sense that we use the term "standardized inference" throughout this opinion.

[6] Mr. Justice NIX, joined by Mr. Justice MANDERINO, adopted this view in his opinion announcing the judgment of the Court in *Commonwealth v. Turner,* 456 Pa. 116, 121 n.3, 317 A.2d 298, 300 (1974). Mr. Justice ROBERTS likewise indicated his acceptance of this view in his concurring opinion in *Turner, supra* at 124, 317 A.2d at 301.

ment [of the constitutionality of a statutory criminal presumption] the [legislative] determination favoring the particular presumption must, of course, weigh heavily",[7] it is not within the power of the legislature to undercut the reasonable doubt standard. Recently, we refused to countenance any relaxation of this standard in the closely related area of so-called "affirmative defenses". *Commonwealth v. Rose*, 457 Pa. 380, 321 A.2d 880 (1974); *Commonwealth v. Demmitt*, 456 Pa. 475, 321 A.2d 627 (1974).[8] Moreover, we have consistently held that where the Commonwealth's case rests entirely on circumstantial evidence, this evidence must be strong enough to sustain a finding of guilt beyond a reasonable doubt. See, e.g., *Commonwealth v. Amato*, 449 Pa. 592, 297 A.2d 462 (1972).[9] The test results which bring the statutory inference into play are merely one kind of circumstantial evidence. It would be incongruous, to say the least, to judge this inference by a standard less stringent.

Because section 624.1(c) is based in part on scientific data which most jurors cannot evaluate in light of their own experience and common sense, it is doubly imperative that the inculpatory inference authorized by

---

[7] *Leary v. United States, supra* at 36, 23 L.Ed.2d at 82.

[8] In *Rose*, we held that it was error to instruct the jury that the defendant had the burden of proving by a preponderance of the evidence that he was too intoxicated to form a specific intent to kill. In *Demmitt*, we held that where there is evidence that the defendant was insane at the time of the crime, the Commonwealth cannot rely on the presumption of sanity to sustain a conviction; there must be sufficient evidence introduced at trial to support a finding of sanity beyond a reasonable doubt. See also *Commonwealth v. Bonomo*, 396 Pa. 222, 151 A.2d 441 (1959).

[9] Accord, *Commonwealth v. Cimaszewski*, 447 Pa. 141, 288 A.2d 805 (1972); *Commonwealth v. Bartlett*, 446 Pa. 392, 288 A.2d 796 (1972); *Commonwealth v. Thomas*, 429 Pa. 227, 239 A.2d 354 (1968); *Commonwealth v. Chester*, 410 Pa. 45, 188 A.2d 323 (1963). See also *United States v. Hamilton*, 457 F.2d 95 (3d Cir. 1972).

the statute be subjected to strict scrutiny. Nevertheless, we have no difficulty in concluding that this inference satisfies the reasonable doubt standard. In its deliberations prior to enacting section 624.1, the legislature considered evidence demonstrating that, in virtually all drivers, driving ability is significantly affected by a blood-alcohol content of 0.10 percent or more.[10] No evidence to the contrary was introduced at the trials below, and our own research suggests that no persuasive evidence of this sort is presently available.[11]

The main thrust of appellants' attack on the statute is directed not to the reasonableness of the inference, but to the failure of the Commonwealth to produce expert witnesses to interpret the test results on which the inference is based. Of course, one of the major purposes of the statute is to eliminate the need for this sort of testimony.[12] Appellants argue, however, that their right to confront the witnesses against them, guaranteed by Article I, section 9 of the Pennsylvania Constitution and the Sixth and Fourteenth Amendments to to the Constitution of the United States, places an obligation on the Commonwealth to produce such witnesses. This contention was expressly rejected by the United States Court of Appeals for the Fourth Circuit in a drunk driving case involving a similar statutory inference. *Kay v. United States*, 255 F.2d 476, 481 (4th Cir. 1958), *cert. denied*, 358 U.S. 825, 3 L. Ed.2d 65 (1958). The same general line of argument was implicitly rejected in the Supreme Court decisions which we have discussed above. For example, in *Tur-*

---

[10] *See* 1968 Legislative Journal, Volume I, 1608-1609.

[11] *See* Committee on Medicolegal Problems, American Medical Association, Alcohol and the Impaired Driver, A Manual on the Medical Aspects of Chemical Tests for Intoxication, chapter V (1972); 4 R. N. Gray, Attorney's Text Book of Medicine ¶133.52 (1974).

[12] The statute does not, of course, prevent defendants from calling expert witnesses to rebut the statutory inference.

*ner v. United States, supra,* the Court upheld a statute which permitted the trier of fact to infer from the defendant's possession of heroin that he knew the drugs had been unlawfully imported. In reaching its conclusion that this inference was constitutionally permissible, the Court relied on a large body of data culled from prior decisions, congressional proceedings, and other official studies not made a part of the record at trial.[13] The clear import of *Turner* and the line of cases from which it stems is that legislatures may incorporate their findings of fact into statutory inferences without infringing on a defendant's constitutional right of confrontation. As the Court said in *United States v. Gainey,* 380 U.S. 63, 67, 13 L.Ed.2d 658, 662 (1965), upholding an incriminating statutory inference: "the process of making the determination of rationality is, by its nature, highly empirical, and in matters not within specialized judicial competence or completely commonplace, significant weight should be accorded the capacity of [the legislature] to amass the stuff of actual experience and cull conclusions from it."

We emphasize that what is described in section 624.1(c) of The Vehicle Code as a "presumption" is really no more than an inference which the jury may accept or reject in the light of all the evidence in the case. If the statute is read as a part of the court's charge, the non-compulsory nature of this inference must be brought home to the jury.[14] More is required

---

[13] As Mr. Justice BLACK remarked in his dissenting opinion: "It matters not to today's majority that the evidence that it cites to show the factual basis of the presumptions was never introduced at petitioner's trial, and that petitioner was never given an opportunity to confront before the jury the many expert witnesses now arrayed against him in the footnotes of the Court's opinion." 396 U.S. at 433, 24 L.Ed.2d at 633.

[14] Read as a whole, the instructions given in the cases at bar appear to be adequate in this respect.

than just a bare recitation of the statute. The concept of a presumption has caused confusion among lawyers as well as laymen, and the unqualified use of this word in the charge of the court may mislead jurors into thinking they are bound to accept the incriminating inference. See *Barfield v. United States*, 229 F.2d 936 (5th Cir. 1956); *United States v. Sherman*, 171 F.2d 619, 624 (2d Cir. 1948); *cert. denied sub nom. Grimaldi v. United States*, 337 U.S. 931, 93 L.Ed. 1738 (1949). The jury should be instructed that the test results are evidence that the defendant was under the influence of intoxicating liquor, and permit a finding to that effect, but that such a finding is not mandatory; that the test results should be considered together with all the other evidence in the case; and that if there is a reasonable doubt in the minds of the jurors as to whether the defendant was under the influence of intoxicating liquor, they should return a verdict of "not guilty".

Judgments of sentence affirmed.

Mr. Justice EAGEN concurs in the result.

Mr. Justice MANDERINO took no part in the consideration or decision of this case.