**COMMONWEALTH of Pennsylvania,**
**Appellee**

**v.**

**Michael SALTER, Appellant.**

Superior Court of Pennsylvania.

Submitted Jan. 12, 2004.

Filed Aug. 17, 2004.

Reargument Denied Oct. 21, 2004.

Patrick J. Connors, Media, for appellant.

Louis G. Stesis, Assistant District Attorney, Media, for Commonwealth, appellee.

Before: JOYCE, OLSZEWSKI, and JOHNSON, JJ.

OPINION BY JOHNSON, J.:

¶ 1 Michael Salter appeals the judgment of sentence imposed following his conviction for failure to verify his residence with the Pennsylvania State Police as required by the verification provision of Megan's Law, 42 Pa.C.S. § 9796. Salter asserts that the Commonwealth did not introduce sufficient evidence to demonstrate that he actually received the notice as required to sustain his conviction, and that the trial court erred in applying the "mailbox rule" to extrapolate receipt from evidence that the notice was sent. We conclude that the trial court's reliance on the mailbox rule to establish an element of a criminal offense expressly violated Salter's right to due process. Moreover, we find that in the absence of the presumption of receipt imposed by the mailbox rule, the Commonwealth's evidence was markedly insufficient to sustain Salter's conviction. Accordingly, we reverse the judgment of sentence.

¶ 2 This matter arose following Salter's release from prison in 1997 upon completion of a term of incarceration for Rape, 18 Pa.C.S. § 3121. In accordance with the verification provision of Megan's Law then in place, see 1995, Oct. 24, P.L. 1079, No. 24 (Spec.Sess. No. 1), § 1, Salter registered his address upon release from prison and subsequently received annual verification notices at that address in 1998, 1999, and 2000. In each year, Salter completed the statutory verification process and returned the required documentation to the Pennsylvania State Police. In 2001, the State Police did not receive a verification statement from Salter and, consequently, apprised police in the Borough of Collingdale, Delaware County, that Salter had not verified his residence. Accordingly, on June 4, 2002, the Collingdale Police Department dispatched Officer Edward Robinson to Salter's last known address at 926 Chestnut Street, where Salter lived with his mother and brother. When Officer Robinson arrived, he spoke with Salter's mother and asked if Salter was at home. She reported that he was not, but agreed that she would tell him that the officer had asked for him. Two days later, Officer Robinson returned to the residence on an

unrelated report of a domestic disturbance arising from a quarrel Salter had had with his brother. Although the two men had ostensibly settled their grievances when Robinson arrived, Salter approached the officer, identified himself and, in apparent reference to his mother's report of Robinson's prior visit, offered "Oh, you're the officer that's been looking for me." When Robinson told him that the State Police were investigating his presumed failure to verify his residence, Slater responded: "F* * * them. They know where I live." When Officer Robinson rejoined that he would be arrested and charged with a felony if he did not register, Salter responded similarly: "F* * * them. I never moved. They can find me."

¶ 3 Following that encounter, the Commonwealth charged Salter with violation of the Megan's Law residence verification requirement and the matter proceeded to a non-jury trial before the Honorable Ann Osborne. To demonstrate that Salter had received a verification notice from the State Police as required to sustain a charge under section 9796, the Commonwealth introduced the testimony of State Trooper Paul Anderson. Trooper Anderson is assigned to the Megan's Law section of the Bureau of Records and Identification where he maintains the sexual offender database. Anderson attested that he bears sole responsibility for issuing section 9796(b) requests for residence verification, and explained the process he uses for printing, documenting, and mailing the notices. Anderson attested further that on no occasion had he failed to mail a verification notice once he had completed that process. Salter's file documented that Anderson had completed the process on December 6, 2001; nevertheless, Anderson had no express recollection of having prepared or mailed the letter. Salter, who took the stand in his own defense,

denied ever having received the December 6 letter.

¶ 4 At the conclusion of the non-jury trial, Judge Osborne found Salter guilty of failure to verify his residence in violation of section 9796(b). At sentencing, the court imposed a term of 24 to 60 months' incarceration. In support of the judgment of sentence, the court reasoned that in the absence of proof that Salter received the verification notice, the receipt element of the crime was sustained by application of the "mailbox rule," an evidentiary presumption that an item once mailed was received by the addressee. Salter now files the underlying appeal, raising the following question for our review:

> WHETHER THE EVIDENCE WAS INSUFFICIENT TO SUSTAIN THE CONVICTION FOR FAILURE TO VERIFY RESIDENCE UNDER 42 PA.C.S. SECTION 9796 SINCE THE COMMONWEALTH FAILED TO PROVE BEYOND A REASONABLE DOUBT THAT MR. SALTER "RECEIVED" A RESIDENCE VERIFICATION FORM FROM THE PENNSYLVANIA STATE POLICE.

Brief for Appellant at 4.

¶ 5 When reviewing a challenge to the sufficiency of the evidence, we must determine " 'whether, viewing all the evidence admitted at trial, together with all reasonable inferences therefrom, in the light most favorable to the Commonwealth, the trier of fact could have found that each element of the offense[ ] charged was supported by evidence and inferences sufficient in law to prove guilt beyond a reasonable doubt.' " *Commonwealth v. Magliocco*, 806 A.2d 1280, 1282 (Pa.Super.2002) (quoting *Commonwealth v. Jackson*, 506 Pa. 469, 485 A.2d 1102, 1103 (1984)). Normally, evidence is deemed

sufficient to support the underlying convictions if:

> there is testimony offered to establish each material element of the crime charged and to prove commission of the offense by the accused beyond a reasonable doubt. The question of credibility is left for the jury and the verdict will not be disturbed if the jury determines the evidence is worthy of belief.

*Id.* (quoting *Commonwealth v. Karkaria,* 533 Pa. 412, 625 A.2d 1167, 1170 (1993)) (citations omitted). "This standard applies equally to cases in which the evidence is circumstantial rather than direct as long as the evidence as a whole links the accused to the crime beyond a reasonable doubt." *Commonwealth v. Morales,* 447 Pa.Super. 491, 669 A.2d 1003, 1005 (1996). We will reverse the resulting verdict only where the evidence is "so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the totality of the circumstances." *Morales,* 669 A.2d at 1005 (citing *Commonwealth v. Govens,* 429 Pa.Super. 464, 632 A.2d 1316, 1328 (1993)).

¶ 6 The elements underpinning Salter's conviction are specified in the verification provision of Megan's Law, the operative section of which provides as follows:

**§ 9796. Verification of residence**

   \*    \*    \*    \*    \*    \*

**(b) Annual verification.**-The Pennsylvania State Police shall verify the residence of offenders through the use of a nonforwardable verification form. *For the period of registration required by section 9795.1, the offender shall appear within ten days of receipt of the form at any Pennsylvania State Police station to complete the verification form and to be photographed.*

42 Pa.C.S. § 9796(b) (emphasis added). Construed in accord with the plain meaning of the statutory language, *see* 1 Pa.C.S. § 1903(a), this section mandates proof that the defendant *actually received* the verification notice sent by the State Police. Insofar as the language requires the offender to appear "within ten days of receipt" of the verification form, any conviction for failure to comply is premised, *per force,* on a determination that the defendant did in fact receive the form. Further, insofar as the language prescribes a time within which the offender must appear, measured from the date of receipt, proof that the offender received the notice on a specified date is indispensable to his conviction for failure to comply.

■ ¶ 7 In this case, the trial court recognized implicitly that the Commonwealth had not introduced proof that Salter actually received the non-forwardable verification form specified by the statute. To substitute for such proof, the court relied on the "mailbox rule" to conclude that Trooper Anderson's testimony that he prepared all sexual offender verification forms in accordance with a procedure that did not vary and mailed them in non-forwardable envelopes effectively established Salter's receipt of the form and allowed his conviction for failure to comply with section 9796(b). Trial Court Opinion, 7/22/03, at 7–8. Salter argues that the court erred in applying the mailbox rule without direct evidence of mailing. Brief for Appellant at 9. We conclude that the court erred in applying the mailbox rule at all. Because, under the Due Process Clause of the Fourteenth Amendment, the elements of a criminal offense must be *proved* beyond a reasonable doubt, imposition of the mailbox rule in this context is constitutionally untenable. Affirmative evidence of a material element of the crime charged may never be displaced by a mere evidentiary presumption; nor may that presumption substitute for evidence.

¶ 8 "The constitution requires that no person be convicted of a crime unless he is proved guilty beyond a reasonable doubt." *Commonwealth v. Turner*, 456 Pa. 116, 317 A.2d 298, 303 (1974) (Roberts, J. concurring) (citing *In re Winship*, 397 U.S. 358, 364, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970) ("The Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged.")). Our courts have acknowledged, nevertheless, that certain logical tools may be necessary to allow the factfinder to proceed by inferential reasoning from one fact to another. *See Commonwealth v. MacPherson*, 561 Pa. 571, 752 A.2d 384, 389 (2000). "[I]nferences and presumptions are staples of our adversary system of factfinding. It is often necessary for the trier of fact to determine the existence of an element of the crime—that is, an 'ultimate' or 'elemental' fact—from the existence of one or more 'evidentiary' or 'basic' facts." *Id.* Nevertheless, to the extent that these logical tools impede rather than assist in the jury's exercise of its factfinding function, they cannot be employed to prove the elements of a crime. Hence, "virtually all so-called 'criminal presumptions' are really no more than ... inferences." *Commonwealth v. DiFrancesco*, 458 Pa. 188, 329 A.2d 204, 207 n. 3 (1974).

¶ 9 An inference is permissive; it "allows, but does not require, the findfinder to infer the elemental fact from proof of the basic fact and places no burden of persuasion or production on the defendant." *MacPherson*, 752 A.2d at 389. "Inasmuch as the trier of fact may either accept or reject the inference, the question of whether the elemental fact is properly inferred from the basic fact rests on the connection between the facts in the context of an evidentiary record, not on an analysis of the relationship between the facts in the abstract." *Id.* at 390. Thus, an inference "does not relieve the State of its burden of persuasion because it still requires the State to persuade the jury that the suggested conclusion should be inferred based on the predicate facts proved." *Id.* at 389 (quoting *Francis v. Franklin*, 471 U.S. 307, 314, 105 S.Ct. 1965, 85 L.Ed.2d 344 (1985)). Accordingly, "[a]n inference is not more than a logical tool enabling the trier of fact to proceed from one fact to another if the trier believes that the weight of the evidence" warrants the conclusion sought. *Turner*, 317 A.2d at 299 (quoting *Commonwealth v. Shaffer*, 447 Pa. 91, 288 A.2d 727, 735 (1972)). "Because [the inference] leaves the trier of fact free to credit or reject the inference and does not shift the burden of proof, it affects the application of the 'beyond a reasonable doubt' standard, only if, under the facts of the case there is no rational way the trier could make the connection permitted by the inference." *MacPherson*, 752 A.2d at 390 (quoting *County Court of Ulster Co. v. Allen*, 442 U.S. 140, 157, 99 S.Ct. 2213, 60 L.Ed.2d 777 (1979)).

¶ 10 By contrast, a presumption, even if rebuttable, is mandatory; "a means by which a rule of substantive law is invoked to force the trier of fact to reach a given conclusion, once the facts constituting its hypothesis are established, absent contrary evidence." *Turner*, 317 A.2d at 299 (quoting *Shaffer*, 288 A.2d at 735); *see also Turner*, 317 A.2d at 299 (quoting *Tanner v. Hughes*, 53 Pa. 289, 291 (1867)) ("A legal presumption is the conclusion of the law itself of the existence of one fact from others in proof, and is binding on the jury, prima facie, till disproved ...."). Thus, "a presumption tells the factfinder that he must find the elemental fact upon proof of the basic fact, ... unless the defendant

comes forward with evidence to rebut the presumed connection between the two." *MacPherson,* 752 A.2d at 390–91. "In this way the presumption shifts the burden of proof to the defendant, and controls the trier's fact determination, despite the other facts adduced at trial." *Id.* at 391. Only if the defendant satisfies this burden does the ultimate burden of persuasion return to the prosecution. *See id.* at 390. If he fails to meet that burden, the court might grant a directed verdict in favor of the Commonwealth. *See DiFrancesco,* 329 A.2d at 207 n. 3; *see also Shaffer,* 288 A.2d at 735 ("A rebuttable presumption forces the defendant to come forth or suffer inevitable defeat on the issue in controversy.").

¶ 11 Our Courts have recognized expressly that application of such a construct is "contrary to accepted tenets of criminal justice. Placing the burden of production on the defendant under the threat of such a sanction would run afoul of the presumption of innocence, as well as the defendant's privilege to decline to testify." *DiFrancesco,* 329 A.2d at 207 n. 3 (citing *Commonwealth v. Bonomo,* 396 Pa. 222, 151 A.2d 441, 445–46 (1959)); *see also Commonwealth v. Williams,* 463 Pa. 370, 344 A.2d 877, 879 (1975) ("In any criminal prosecution, the Commonwealth has an unshifting burden to prove beyond a reasonable doubt all elements of the crime.... (T)he defendant has no burden of persuasion."); *Commonwealth v. Wagaman,* 426 Pa.Super. 396, 627 A.2d 735, 737 (1993) (citing *Bonomo,* 151 A.2d at 445) ("It is the continuing presumption of innocence which is the basis for the requirement that the state has a never-shifting burden to prove guilt beyond a reasonable doubt."); *Commonwealth v. Loccisano,* 243 Pa.Super. 522, 366 A.2d 276, 283 (1976) ("There can be no burden on a defendant to disprove an element of the offense."). *"Thus, where the presumed fact comprises an element of the crime charged, the inference author-* *ized by a presumption can never be compelled by the court." DiFrancesco,* 329 A.2d at 207 n. 3 (emphasis added).

¶ 12 The trial court's use of the mailbox rule to establish an element of the underlying crime disregards this prohibition as it does the presumption of innocence. The mailbox rule is in fact a rebuttable presumption. *See, e.g., Berkowitz v. Mayflower Sec., Inc.,* 455 Pa. 531, 317 A.2d 584, 585 (1974) (concluding that proof of mailing "creates a rebuttable presumption that the [item mailed] was in fact received"); *Breza v. Don Farr Moving & Storage Co.,* 828 A.2d 1131, 1135 (Pa.Super.2003) (concluding that mailbox rule "provides that proof of a mailing raises a rebuttable presumption that the mailed item was received"); *Samaras v. Hartwick,* 698 A.2d 71, 73 (Pa.Super.1997) ("[I]t has long been the law of our Commonwealth that proof of a mailing raises a rebuttable presumption that the mailed item was received."); *Campbell v. Royal Indem. Co. of N.Y.,* 256 Pa.Super. 312, 389 A.2d 1139, 1142 (1978) (concluding that upon proof of mailing "a presumption of due receipt may be applied"). These same cases have held that "a denial of receipt is not sufficient, in itself, to rebut this presumption." *Berkowitz,* 317 A.2d at 585; *see also Samaras,* 698 A.2d at 73 ("[I]t is well-established that the presumption under the mailbox rule is not nullified solely by testimony denying receipt of the item mailed.").

¶ 13 Consequently, the application of the mailbox rule in this context virtually assures the defendant's conviction regardless of whether his receipt of the notice to register is ever established "upon proof beyond a reasonable doubt." *In re Winship,* 397 U.S. at 364, 90 S.Ct. 1068 . Not only is the Commonwealth relieved of its burden to establish receipt *as a fact;* the defendant is compelled to prove non-receipt, and then is deprived of the only evidence on which he might hope to rely,

*i.e.,* his own testimony. Given the extraordinary disadvantage at which the rule places any party so unfortunate to be on its receiving end, we find no anomaly in the fact that we have never before applied it to prove the elements of a criminal offense and no justification for its application here. The mailbox rule is, at its foundation, a civil construct the likes of which may be recognized in the criminal arena only in extremely limited circumstances. *See Commonwealth v. Thomas,* 814 A.2d 754, 761 (Pa.Super.2002) (allowing use of mailbox rule to establish that defendant had received notice of hearing but concluding that evidence of mailing was insufficient for presumption to attach). Under no circumstance may it substitute for "proof beyond a reasonable doubt" where the very question at issue is subsumed by its presumption.

¶ 14 Because the mailbox rule is inapplicable, we find the remaining evidence of receipt wholly insufficient to establish the defendant's receipt of the notice at issue, and hence, to sustain his conviction. The trial court concludes that the defendant's hostility on being told by a police officer of the registration requirement establishes that he had received the notice and had chosen to ignore it in violation of section 9796. We find no basis for so expansive a conclusion. The defendant's agitated rant, and his rejoinder on being threatened with arrest, betray little more than frustration and bear no demonstrable relationship with whether he received the notification to verify his residence. Though his language was, no doubt, untoward and intemperate, we find nothing in the defendant's statements to establish "beyond a reasonable doubt" that he had, in fact, received the notice. Even were we to conclude otherwise, the evidence is rendered similarly deficient by the absence from the record of proof of a date on which receipt may have occurred. In the absence of such proof, the defen-

dant's failure to comply with the mandate of section 9796(b) cannot be shown. We are compelled to conclude accordingly that the evidence is markedly insufficient to sustain Salter's conviction.

¶ 15 Accordingly we reverse the judgment of sentence and remand this case with instructions that the defendant be discharged.

¶ 16 Judgment of Sentence REVERSED. Case REMANDED with instructions. Jurisdiction RELINQUISHED.

¶ 17 JOYCE, J. files a Concurring Statement in which JOHNSON, J. joins.

¶ 18 OLSZEWSKI, J. files a Dissenting Opinion.

JOYCE, J., Concurring:

¶ 1 I unreservedly join the well-reasoned and thoughtfully articulated Opinion of the Majority. I write separately to urge the legislature to amend 42 Pa.C.S.A § 9796(b) to articulate specific modes of delivery and proofs of receipt of the verification form. Failing this, I implore the Pennsylvania State Police to employ additional services available through the United States Postal Service in order to verify the receipt element expressed in 42 Pa.C.S.A § 9796(b).

¶ 2 JOHNSON, J. joins.

OLSZEWSKI, J., Dissenting:

¶ 1 To the extent the Court rejects the use of the mailbox rule in the criminal context, I thoroughly agree with the reasoning and analysis of the majority's well-written opinion. I must, however, dissent because I nonetheless believe that the evidence of receipt was sufficient to sustain appellant's conviction.

¶ 2 At trial, the Commonwealth presented testimony from Trooper Anderson of the Pennsylvania State Police (PSP) and Officer Robinson of the Collingdale Borough Police Department. Appellant was

residing in Collingdale Borough at the time the alleged violation of § 9796 occurred. I begin with Anderson's testimony. Anderson has been a trooper with the PSP for eleven years and has served in the Megan's Law Section of the Bureau of Records and Identification for the last two and one-half years. Anderson maintains the Commonwealth's sexual offender database and bears sole responsibility for issuing the § 9796(b) requests for residence verification.

¶ 3 The request for residence verification is a one-page, two-sided document. The front side is a letter that is addressed to the registered offender. The back side is a form to be completed by the offender within ten days of receipt. Anderson described his routine for preparing the requests. Each day his computer generates a list of registered offenders from whom Anderson must request residence verification. Anderson begins with a supply of forms that are blank on the front side and that have pre-printed questions on the back side. The forms are placed in the printer and the computer prints the individually-addressed letters on the front side of the form. The letter is addressed to the last verified address of the offender. Once Anderson has printed the letters onto the front side of the form, he prepares a photocopy for his files. Only the front (letter) side of the form is photocopied and placed in a file. Anderson maintains a separate file for each registered offender. Anderson does not photocopy the back side because it has not yet been completed by the offender and, therefore, does not contain any usable information. After Anderson makes the photocopy of the letter side of the form, "the original is placed in an envelope and mailed." N.T. 1/9/2003 at 72. The letters are sent via first-class U.S. mail. The requests are not sent by certified or registered mail. *Anderson explained that the letters are non-forwardable which means that if the post office is unable to deliver the letter to the address indicated, the post office will return the letter to the Bureau.* Anderson testified that there has never been an instance when he prepared a verification request, made a photocopy of the front side, placed the photocopy in the file, and then failed to mail the original to the offender.

¶ 4 Anderson explained that once an offender receives a request for residence verification, the offender has ten days to report to any PSP barracks in the Commonwealth to complete and sign the back side of the form and to be photographed. Once the barracks collects the completed form and has taken the photograph, the form and photograph are sent to Anderson in the Bureau of Records and Identification. The Bureau of Records and Identification is the only office within the PSP that is authorized to receive and maintain the completed forms and photographs. Anderson retains the original form and photograph in each individual offender's file. Anderson testified that in December 2001, he was the only person in the Bureau of Records and Identification who prepared, mailed, received, and maintained the sexual offenders' residence verifications.

¶ 5 Anderson described the contents of the file he maintains on appellant, with copies of the documents being introduced into evidence. First, the file contained the original Sexual Offender Registration Form signed by appellant in December 1997. Second, the file contained the original letters mailed to appellant in December 1998, 1999, and 2000, with appellant's original signature and residence information on the back side of each original letter. Third, the file contained the photocopies of the letter side of the December 1998, 1999, and 2000 requests. Fourth, the photographs taken by the PSP during the 1998, 1999, and 2000 verifications were attached to the original letters. Fifth, the

file contained a photocopy of the December 6, 2001 letter addressed to appellant at his last verified address.[1] Finally, the file contained a photocopy of a May 23, 2002 letter addressed to the Collingdale Borough Police Department advising that appellant is a registered sexual offender residing in their jurisdiction and that appellant failed to comply with the most recent request for residence verification. When questioned by appellant's counsel, Anderson admitted he does not have any proof that appellant received the December 6, 2001, verification request. Anderson stated that the only proof that he could offer was his testimony that he prepared and mailed the request. Anderson admitted that he has no independent recollection of preparing the December 2001 request addressed to appellant.

¶ 6 The Commonwealth presented the testimony of Officer Robinson of the Collingdale Borough Police Department. Robinson testified that he received instructions from his sergeant and his chief to go to appellant's home and notify appellant that it was time to register with the PSP. Robinson went to appellant's home on June 4, 2002, and spoke with appellant's mother. The mother called for appellant who did not respond. The mother then indicated to Robinson that appellant must not be at home. Robinson informed the mother that appellant had to register under the sexual offender's law.

¶ 7 Robinson testified that he returned to appellant's home two days later, on June 6, 2002, in response to a call of a domestic disturbance. When Robinson arrived at the home, appellant and his brother were outside. The brothers had been arguing but stopped when Robinson arrived. Robinson told the court that after

he had determined that the situation did not require police intervention, appellant approached Robinson and asked his name. Robinson answered and appellant stated "[O]h, you're the officer that's been looking for me." N.T. 1/9/2003 at 85. Robinson then informed appellant that it was time for him to register under Megan's Law. Appellant responded "[F]* * * them. They know where I live." N.T. 1/9/2003 at 86. Robinson informed appellant that failure to register is a felony and warrant would be issued for his arrest. Appellant again responded "[F]* * * them. I never moved. They can find me." N.T. 1/9/2003 at 86. Robinson reported to his supervisors that he had made contact with appellant regarding Megan's Law, and he relayed appellant's responses.

¶ 8 This Court is required to review the evidence admitted at trial, *including all reasonable inferences therefrom,* in the light most favorable to the Commonwealth. *Commonwealth v. Haughwout,* 837 A.2d 480 (Pa.Super.2003). In this case, the Commonwealth presented the testimony of Anderson who stated that the December 2001 request for residence verification was mailed to appellant in a non-forwardable envelope. Anderson explained that a non-forwardable envelope is returned to the sender (in this case, Anderson) if it cannot be delivered. Anderson also described his file on appellant in meticulous detail. Anderson had copies of every request sent to appellant and the original of every form that appellant had completed. Noticeably absent from Anderson's file is the non-forwardable envelope returned by the post office containing the December 2001 request. The reasonable inference that I draw is that the envelope was, in fact, delivered to appellant at his registered address. A second inference that supports

---

1. I note that appellant's residence address never changed from the time he was released from incarceration in 1997 until the time of his prosecution for failure to verify his residence when it was requested in December 2001.

the verdict is appellant's response to Officer Robinson on June 6, 2002. When confronted by Officer Robinson that appellant had to re-register, appellant's only response was "[F]* * * them. They know where I live." and "[F]* * * them. I never moved. They can find me." N.T. 1/9/2003 at 86. One can reasonably infer from these statements that appellant had received the request; the more likely response from someone in appellant's position who had not received the request would have been to indicate so. Standing alone, appellant's statements are not sufficient proof of receipt; however, when coupled with the absence of the non-forwardable envelope in Anderson's file, I find that the reasonable inferences do prove receipt beyond a reasonable doubt.

¶ 9 I would affirm the judgment of sentence.