## Williams *versus* The Commonwealth.

A person indicted, arraigned, and convicted at a regular term of a Court of Oyer and Terminer, may be afterwards legally sentenced at an adjourned term of such court.

The testimony given by the prisoner under oath before a coroner's inquest, previous to him being charged or suspected of the murder of the individual upon whose body the inquest was sitting, may afterwards be given in evidence against him, on his trial for the murder of such person.

Where the court suggest to the jury a fact of which there is no evidence, the error is cured if, in immediate connection with such suggestion, the court tell the jury that the absence of evidence of such fact is the strongest circumstance in favour of the defendant.

Possession of the fruits of crime by the prisoner is of great weight in establishing the proof of murder, where that crime has been accompanied with robbery.

ERROR to the Oyer and Terminer of *Dauphin county*.

The plaintiff in error, William Williams, was indicted, tried, and convicted of murder, for having, on the 3d day of May, 1857, caused the death of Daniel Hendricks, by shooting him. The indictment was found by the grand jury, at the August Term, and continued till November Term. The prisoner was arraigned, 19th November, 1857, and pleaded not guilty, and on the following day the jury returned a verdict of guilty of murder in the first degree. The counsel for the prisoner moved for a new trial, and the case was continued to an adjourned court commencing on the 18th December, 1857, at which time the motion for a new trial was argued, and overruled by the court, and the prisoner sentenced to be hanged.

On the trial in the court below, it having been proved that James Ferree, Esq., a justice of the peace, had held an inquest on the body of Daniel Hendricks, and appointed Richard Nolen foreman of the inquest, and directed him to swear witnesses; and whilst the inquest was still sitting, Richard Nolen called upon and requested William Williams to be sworn and give evidence as a witness; and Williams was duly sworn, and was asked by Nolen, in presence of the inquest, when he had last seen Daniel Hendricks; and proposed to prove the evidence given by Williams, as a witness before the inquest; to which evidence being given on the trial of the present cause, the counsel for the prisoner, William Williams, objected, because the statement so made and evidence given was made and delivered by Williams when sworn as a witness, and, being in the nature of a compulsory statement, cannot be given in evidence against him on the trial of the present cause.

The objections were overruled and the evidence admitted.

The charge of the court below (PEARSON, P. J.) was excepted

[Williams *v.* The Commonwealth.]

to, and after conviction and judgment the prisoner applied for a writ of error; which being allowed, his counsel assigned that the court below erred,

1st. The court permitted the Commonwealth to prove by Richard Nolen and others, the testimony given by William Williams under oath as a witness before the coroner's inquest, which was error. Because the statement so made, and the evidence thus given, was in the nature of a compulsary statement, and should have been rejected.

2d. To the charge of the court, viz: "At the time of leaving the house, Williams had no gun with him. Amanda says she saw no gun in the house at that time. Did he keep it at the mine where he worked, and obtain it after they started, or had he left it in the woods as has been argued?" As there was no testimony that Williams had a gun anywhere at that time, this assumption on the part of the court was error.

3d. "The jury will perceive that the possession of stolen goods, soon after they are stolen, may not only be used as evidence of larceny, but also of arson, of highway robbery, or of murder," which was error, and unduly influenced the jury.

4th. "On the evidence before you, if Williams was on his trial for larceny of the watch, would you convict him? If you would, the writers on the laws of evidence *all agree* that the jury may infer a still higher crime was committed" (and cited the case of John Quiggles, in *Wills on Circumstantial Evidence,* and a case tried in one of the western counties of this state), which was error.

5th. In the Oyer and Terminer of November Sessions, the prisoner was convicted on the 19th day of November, and on the 2d day of December the Oyer and Terminer was adjourned by order of the court, to meet on the 18th day of December, when the reasons for a new trial were heard, overruled, and the prisoner sentenced to be hung, which was error, under our Acts of Assembly.

*H. C. Alleman* and *W. T. Bishop,* for plaintiff in error.—1st. The true criterion is to ascertain whether those statements were voluntary or not. Of this we can only judge by the attending circumstances. Williams had been to see the body, and there made the expression, " I suppose I am the last man seen Hendricks." Was in bed—called up at a late hour—and then sworn by Richard Nolen, the foreman of the jury (and the acting constable of the township), in the presence of the jury and others. From these circumstances we may naturally infer that his mind must have been more or less under the influence of fear, whether guilty or innocent, as the minds of most men would be under similar circumstances, time and place. The mind agitated and confused by the apprehension of danger, cannot reason with coolness, and resorts to falsehood when the truth would be safer.

[Williams *v.* The Commonwealth.]

Neither false statements or confessions afford any certain evidence of guilt. As laid in Thompson's case, *Leach's C. C.* 291, too great caution cannot be observed on this subject: Haworth's case, 4 *Car. & Payne* 524; Rex *v.* Lewis, 6 *Car. & Payne* 161; Rex *v.* Davis, 6 *Car. & Payne* 177; Rex *v.* Wheeley, 8 *Car. & Payne* 250; Owen's case, 9 *Car. & Payne* 83; State *v.* Broughton, 7 *Iredell's Reports* 96; 1 *Greenleaf's Evidence Par.* 219, 226; *Joy on Con.* 67, 68; 7 *Car. & Payne* 486.

2d. The intimation by the court that Williams had his gun, either at the mine or in the woods, was unsupported by the evidence in the case; it was an unwarrantable assumption on the part of the court, and therefore contrary to law. If the court instruct the jury that they may indulge a presumption not warranted by the evidence, a new trial will be awarded: *Wh. Am. C. L.* 994, *and note* 10, 3d Ed.

3d. Possession of stolen goods is *prima facie* evidence of the guilt of larceny; but is not evidence of the high crime of murder. The fouler the crime, the stronger should be the proof required for conviction: *Wills Cir. Ev.* *157; *Phil. Ev.* 460, 8th Ed.

4th. If this broad doctrine is the law of the land, there is but little difference in the testimony required to convict of petty larceny or of murder, and is in direct conflict with the principle, that the more flagrant the crime, the more convincing should be the proof of its commission.

5th. There was no lawful authority for holding an adjourned court of Oyer and Terminer on the 18th day of December, 1857, as no special precept was issued, and the prisoner was unlawfully sentenced, for want of jurisdiction of the court at that time: Mills *v.* Com., 1 *Harris* 627; *Pur. Dig.* 694, § 23, 24.

*A. J. Herr*, District Attorney, for Commonwealth.—Where a person having been examined as a witness, answers questions to which he might have demurred as tending to criminate himself, his answers are voluntary: 2 *Stark. Evid.* 28; Wheater's case, 2 *Lewin* 157; 2 *Mood.* 45; *Joy on Con.* 62; *Roscoe Evid.* 45; 2 *Stark.* 366; 4 *Camb.* 10; 5 *Car. & Payne* 530; 9 *Car. & Payne* 83; State *v.* Vaigner, 5 *Richardson* 391.

Possession of fruits of crime, recently after its commission, is strong ground for presuming guilt: *Car. & Payne*, 11 p. 457; *Wills Cir. Evid.* 72, 81, 82.

An adjourned court of Oyer and Terminer have power to pass sentence of death: 25th section Act of 14th April, 1834.

The opinion of the court was delivered by

PORTER, J.—The probable dependency of a human life on this decision, has compelled our attention to the case in its minutest points. We are satisfied with the regularity of the proceeding.

[Williams v. The Commonwealth.]

The defendant was indicted, arraigned, tried, and convicted at the regular term of the Oyer and Terminer, and by the Act of 14th April, 1834, the court was lawfully adjourned to the time at which he was sentenced. The case of Mills, 1 *Harris* 627, is not in point; for there the defendant was wholly tried at an adjourned session.—The question most discussed, was the admission of Richard Nolen's testimony. When the inquest had been summoned, this person, who acted as constable of the township, was designated its foreman,—a dangerous and reprehensible act. In this capacity he examined the defendant as a witness, and afterwards detailed his statements in court. If the defendant had been awakened out of sleep, charged with crime, and then, in the necessary confusion of his faculties, sworn to testify, I should have steadfastly resisted the subsequent introduction of the testimony against him. The common law, which justifies an accused man in entire silence, appears in beautiful contrast to the Continental systems, which permit the criminal to be racked by inquisitorial skill, until something be wrung from him which may be patched up into proof of guilt. This case shows nothing of the kind. The phrase " called up," commented on by the counsel, does not appear in the record, and if employed by the witnesses, related doubtless to the ordinary case of calling forth a witness, and not of awakening him from slumber. When the defendant was sworn before the inquest, he had neither been charged with nor suspected of crime. He might have declined to testify, and this would have pointed suspicion directly to him. He took the risk of a statement, and cannot complain that he met the legitimate consequences of the act. In the eye of all the authorities, it was a voluntary statement: 3 *Moody Crim. Cases* 45; *Joy on Confessions* 62; *Roscoe's Crim. Ev.* 45. In the State v. Vaigneur, 5 *Richardson* 391, a case very similar to the present, where the prisoner, before accusation, testified to the coroner's jury, his statements were held admissible in the subsequent trial. In the Pennsylvania case to which we have been referred, Commonwealth v. Harman, 4 *Barr* 269, the examination of a prisoner under oath, before a committing magistrate, was pronounced inadmissible. In that case, there was a threat of committal on a charge actually preferred, and an officer of the law was engaged in its investigation, with reference to the prisoner himself. In the one, the witness was called on, as any innocent man; in the other he was a criminal at the bar of justice. The difference is all important.

What the court said of the gun, is complained of. The deceased seemed to have been killed by a small pebble, shot into his vitals from a smooth bored gun, such as the defendant's house contained. On the fatal day, the prisoner was not proved to have carried this gun. The court ask, " Did he keep it at the mine where he worked, and obtain it after he started, or had he left it

in the woods, as has been argued?" This remark is supposed un-warranted, as no proof was given that he had a gun, either at the mine or in the woods; but the suggestion is immediately followed by another, which must be construed with it: "The fact of Williams having no gun when they left the house, and there being no proof that he obtained one by the way, is the strongest circumstance in his favour, and tends to throw doubt on the whole case." If any injury was done by the first thought, it was more than removed by the last. The error, if it were one, and its correction, went together.—In that portion of the charge which treats of the possession of the coin, and the right of the jury to infer a higher crime from the possession of stolen articles, sufficient to convict the defendant of larceny, we see as little to condemn. If criminal offences are to be punished, circumstances like these must be laid hold of to prove them. One of the best writers on circumstantial evidence has lent the sanction of his name to the doctrine that possession of the fruits of crime is of great weight in establishing the proof of murder, where that crime has been accompanied with robbery: *Wills on Circumstantial Evidence* 81: and the principle commends itself to our reason.

Judgment affirmed.