J-S33013-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | : | |
| JAMES FLEETRO THOMAS | : | |
| Appellant | : | No. 1531 MDA 2018 |

Appeal from the Judgment of Sentence Entered June 20, 2018
In the Court of Common Pleas of Lancaster County Criminal Division at
No(s):  CP-36-CR-0000599-2017

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | : | |
| JAMES FLEETRO THOMAS | : | |
| Appellant | : | No. 1532 MDA 2018 |

Appeal from the Judgment of Sentence Entered June 20, 2018
In the Court of Common Pleas of Lancaster County Criminal Division at
No(s):  CP-36-CR-0000600-2017

BEFORE:  LAZARUS, J., OTT, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY LAZARUS, J.:                   **FILED AUGUST 02, 2019**

James Fleetro Thomas appeals from the judgments of sentence, entered in the Court of Common Pleas of Lancaster County, after a jury convicted him of one count each of burglary[1] and recklessly endangering another person[2]

_____

[1] 18 Pa.C.S.A. § 3502(a)(1)(ii).

(REAP), and three counts of receiving stolen property[3] (RSP).[4] Upon careful review, we affirm in part and vacate in part.

On January 17, 2017, Kennith Cauler awoke at his home, 15 Susquaw Place, to discover his back door open, his drawers rifled through, and his blue Subaru Forester ("the Subaru") missing. Cauler reported to the police an Xbox, an Xbox controller, an antique glass bowl with change, an iPad, and an iPhone 6 had been taken from his house, and a Gibson guitar and an iPhone 4 were inside the stolen Subaru.

The Manheim Township Police Department suspected Thomas' involvement with the break-in at 15 Susquaw Place and sent detectives to surveil 1343 Glen Moore Circle, which they believed to be Thomas' residence.[5]

_____

[2] 18 Pa.C.S.A. § 2705.

[3] 18 Pa.C.S.A. § 3925(a).

[4] Thomas' trial encompassed charges filed under docket numbers CP-36-CR-0000599-2017 and CP-36-CR-0000600. In addition to the five above mentioned convictions, the jury found Thomas not guilty of one count of burglary under docket number CP-36-CR-0000600. Thomas also pleaded guilty to burglary, theft, and criminal mischief under docket number CP-36-CR-0001651-2017, for a negotiated sentence of two to five years' incarceration running concurrent to the sentences imposed on the two above-mentioned docket numbers.

[5] The trial testimony, the parties' briefs, and the trial court's opinions all fail to mention why Thomas was a suspect or why 1343 Glen Moore Circle was under surveillance. It appears Manheim Township Detectives Brent Shultz and Brian Freysz were investigating a series of local thefts, and noticed similarities to a series of thefts in 2014 for which the two detectives had arrested Thomas. **See** Affidavit of Probable Cause, 1/18/17, at 5. A records search revealed Thomas was, at the time, under the supervision of Lancaster

On January 18, 2017, around 1:00 a.m., Detective Steven Newman observed a blue Subaru park in front of 1343 Glen Moore Circle, and watched as Thomas exited the car, opened the back of the vehicle, and took a large flat-screen television into the house. The detectives then determined from the license plate that the Subaru was the car stolen from 15 Susquaw Place the previous day. Thomas got back in the Subaru and headed west on Fruitville Pike.

Shortly thereafter, an officer attempted to pull Thomas over. Instead of stopping, Thomas slowed down, leapt from the Subaru, and fled on foot. Meanwhile, the Subaru rolled down Fruitville Pike, heading toward the lanes designated for oncoming traffic. Detective Newman pursued Thomas on foot and eventually took him into custody. Officer John Donnelly ran the Subaru down on foot, managing to jump into the moving vehicle and put it in park after it had rolled approximately fifty feet.

Following Thomas' arrest in the early morning of January 18, 2017, Officers searched the Subaru and found an iPhone charger belonging to Cauler, as well as a purse and checkbook belonging to Lynn Niehaus. Soon after, officers executed a search warrant on 1343 Glen Moore Circle, discovering two iPhones and an iPad belonging to Cauler. The officers also discovered a flat-screen television, a laptop computer, and a key fob.

---

County Adult Probation, and in a relationship with a woman living at 1343 Glen Moore Circle. *Id.* Three detectives then proceeded to surveil the property in the early morning of January 18, 2017. *Id.*

At 5:10 a.m. that same day, Adam Fry awoke at his 103 Red Oak Road home, along with Niehaus, his girlfriend. Fry noticed the back door was open, and his flat-screen television, his laptop, two sets of car keys, and Niehaus' iPad were missing. Niehaus discovered her purse, which contained makeup, a laser measure, a tape measure, and a checkbook, was missing. These items were all discovered in Thomas' possession following searches of his person, the stolen Subaru, and 1343 Glen Moore Circle. Prior to trial, the parties stipulated that no fingerprint, DNA, or trace evidence linked Thomas to the crimes committed at 103 Red Oak Road or 15 Susquaw Place, and that there were no witnesses that could link him with either location.

On March 13, 2018, following a two day trial before the Honorable Donald R. Totaro, the jury rendered the following verdict: on docket number CP-36-CR-0000599-2017,[6] guilty of one count of burglary and one count of RSP; on docket number CP-36-CR-0000600-2017,[7] guilty of two counts of receiving stolen property and one count of REAP, and not guilty of burglary. On June 20, 2018, the court sentenced Thomas as follows: ten to twenty years' incarceration for burglary, with RSP merging for sentencing purposes on docket number CP-36-CR-0000599-2017; and three to seven years' incarceration for both counts of RSP and one to two years' incarceration for

---

[6] The Commonwealth prosecuted charges connected to events at 103 Red Oak Road under docket number CP-36-CR-0000599-2017.

[7] The Commonwealth prosecuted charges connected to events at 15 Susquaw Place under docket number CP-36-CR-0000600-2017.

- 4 -

REAP, set to run concurrently on docket number CP-36-CR-0000600-2017, but consecutively to Thomas' sentence for burglary on docket number CP-36-CR-0000599-2017.

On June 27, 2018, Thomas filed post-sentence motions challenging the sufficiency of the evidence, which the court denied on August 17, 2018. Thomas timely filed notices of appeal,[8] followed by a court-ordered concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). He raises the following issues for our review:

1) Was the evidence presented by the Commonwealth insufficient to prove beyond a reasonable doubt that [] Thomas committed [the] burglary of 103 Red Oak Road, where there was no evidence that [] Thomas entered 103 Red Oak Road?

2) Was the evidence presented by the Commonwealth insufficient to prove beyond a reasonable doubt that [] Thomas received more than $2000 in stolen property from 15 Susquaw Place; thus, on [docket number CP-36-CR-0000600-2017], should [Thomas] have been convicted of receiving stolen property graded as a first[-]degree misdemeanor?

3) Was the evidence presented by the Commonwealth insufficient to prove beyond a reasonable doubt that [] Thomas recklessly endangered another person where there was no evidence that [] Thomas placed any person in danger of death or serious bodily injury by fleeing from his vehicle without first placing the vehicle in park?

_____

[8] Thomas filed separate notices of appeal under both docket numbers in compliance with **Commonwealth v. Walker**, 185 A.3d 969 (Pa. 2018). Both parties consented to consolidate Thomas' appeals pursuant to Pa.R.A.P. 513. **See** Stipulation for Consolidation, 9/27/18, at 1–3. Consequently, we review issues arising under both docket numbers together. **See** Pa.R.A.P. 513 (appeals may be consolidated by stipulation of parties to multiple appeals).

Brief of Appellant, at 7.

Thomas' claims all attack the sufficiency of the evidence underpinning his convictions. Our standard of review with regard to such claims is well-settled:

> We review claims regarding the sufficiency of the evidence by considering whether, viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. Further, a conviction may be sustained wholly on circumstantial evidence, and the trier of fact—while passing on the credibility of the witnesses and the weight of the evidence—is free to believe all, part, or none of the evidence. In conducting this review, the appellate court may not weigh the evidence and substitute its judgment for the fact-finder.

*Commonwealth v. Strafford*, 194 A.3d 168, 174 (Pa. Super. 2018) (citations and quotations omitted).

Thomas first claims his burglary conviction rests on insufficient evidence, as there was no direct evidence he entered Fry and Niehaus' home. Brief of Appellant, at 17.

The Crimes Code, in relevant part, defines burglary as follows:

**§ 3502. Burglary**

(a)  Offense defined.--A person commits the offense of burglary if, with the intent to commit a crime therein, the person:

[(1)](ii) enters a building or occupied structure, or separately secured or occupied portion thereof that is adapted for overnight accommodations in which at the time of the offense any person is present[.]

18 Pa.C.S.A. § 3502(a)(1)(ii); *see also Commonwealth v. Cooper*, 941 A.2d 655, 666 (Pa. 2007) ("[T]he Commonwealth is required to prove beyond

a reasonable doubt that the offender entered the premises, with the contemporaneous intent of committing a crime, at a time when he was not licensed or privileged to enter.")

In addition to furnishing the finder of fact with sufficient evidence to prove every element of each crime beyond a reasonable doubt, the Commonwealth must establish, beyond a reasonable doubt, the identity of the defendant as the individual who perpetrated the crimes. **Strafford**, **supra** at 174. Evidence of identification, however, "need not be positive and certain to sustain a conviction." **Commonwealth v. Orr**, 38 A.3d 868, 874 (Pa. Super. 2011) (en banc). Further, "[t]he Commonwealth may sustain its burden by proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence." **Commonwealth v. Callen**, 198 A.3d 1149, 1167 (Pa. Super. 2018).

Our courts have acknowledged, in finding a defendant guilty beyond a reasonable doubt, finders of fact occasionally must rely on inferential reasoning, expounding on the relationship between inference and reasonable doubt as follows:

> An inference is permissive; it allows, but does not require, the factfinder to infer the elemental fact from proof of the basic fact and places no burden of persuasion on the defendant. Inasmuch as the trier of fact may either accept or reject the inference, the question of whether the elemental fact is properly inferred from the basic facts rests on the connection between the facts in the context of an evidentiary record, not on an analysis of the relationship between the facts in the abstract. Thus, an inference does not relieve the [Commonwealth] of its burden of persuasion because it still requires the [Commonwealth] to persuade the jury

- 7 -

that the suggested conclusion should be inferred based on the predicate facts proved. Accordingly, an inference is not more than a logical tool enabling the trier of fact to proceed from one fact to another if the trier believes that the weight of the evidence warrants the conclusion sought. *Because the inference leaves the trier of fact free to credit or reject the inference and does not shift the burden of proof, it affects the application of the [] reasonable doubt standard, only if, under the facts of the case there is no rational way the trier [of fact] could make the connection permitted by the inference*.

**Commonwealth v. Salter**, 858 A.2d 610, 615 (Pa. Super. 2004) (emphasis added) (citations and quotations omitted).

In **Commonwealth v. Owens**, 271 A.2d 220 (Pa. 1970), our Supreme Court found it impermissible to presume an individual knew property had been stolen when that individual possessed recently stolen goods. **See id.** at 322. In doing so, **Owens** thus precluded unconstitutional burden-shifting, wherein the defendant was forced to prove his own innocence. **See id.** at 235 (stating previously used presumption as: "Where property has been stolen and is speedily found in possession of [someone], the law puts upon him the burden of its explanation. Otherwise, he is deemed to have been the thief.")

The **Owens** rationale, however, is inapplicable where "guilt is based upon an evidentiary inference rather than a burden[-]shifting presumption." **Commonwealth v. Brosko**, 365 A.2d 867, 869 (Pa. Super. 1976). Instead, the constitutionality of an evidentiary inference is determined by evaluating whether the inferred fact "is more likely than not to flow from the proved fact on which it is made to depend. Where the inference allowed is tenuously connected to facts proved by the Commonwealth, due process is lacking."

*Commonwealth v. McFarland*, 308 A.2d 592, 594 (Pa. 1973) (citations omitted); *see also Commonwealth v. Turner*, 317 A.2d 298 (Pa. 1974) (holding possession of recently stolen property could justify conclusion possessor was thief where additional facts established rational nexus sufficient to establish guilt beyond reasonable doubt). Our Supreme Court delineated the following factors for determining whether the Commonwealth's evidence "more likely than not" gives rise to the inference that an individual participated in a burglary: "the lapse of time between the crime and the discovery of the property; the type and kind of property; the amount and volume of property; and the ease in which it may be assimilated into trade channels." *McFarland*, *supra* at 594. (citation omitted).

In *Commonwealth v. Shaffer*, 228 A.2d 727 (Pa. 1972), on facts where the appellant was apprehended twenty-four hours after two burglaries in possession of twenty-five pieces of jewelry bearing individuals' names and initials, our Supreme Court applied the above-mentioned factors and found "the inference of complicity in the burglary could 'more likely than not' flow from the proved fact of possession of recently stolen, non-negotiable property." *McFarland*, *supra* at 594 (citing *Shaffer*, *supra* at 737). In contrast, under circumstances where the police arrested an individual in possession of bonds that had been stolen from a private home eleven months earlier, the Court concluded it improper to infer his participation in the

burglary because "the possibilities of acquisition which do not involve complicity in the [] burglary are numerous." **McFarland**, **supra** at 595.

Here, Thomas argues it was improper for the jury to infer his participation in the burglary of Fry and Niehaus' home from his possession of their property. **See** Brief of Appellant, at 17, 21. Moreover, he argues the trial court substituted the requirement that the Commonwealth prove each element of burglary beyond a reasonable doubt for one merely requiring it be "more likely than not" that Thomas committed the burglary. **See id.** at 21.

Thomas' arguments misconstrue the role inferential reasoning plays in a fact finder's conclusions. **See Salter**, **supra** at 615. The Commonwealth is always required to prove each element of a crime beyond a reasonable doubt, however it may do so by drawing on evidence to support inferences, which the trier of fact may then credit or reject. **See id.** The "more likely than not" standard is instead used to evaluate whether or not an evidentiary inference, upon which a jury based a finding of guilt beyond a reasonable doubt, is constitutionally infirm. **See McFarland**, **supra** at 439.

Thomas precipitated his own arrest by taking Fry and Niehaus' television into 1343 Glen Moore Circle in plain view of three detectives at 12:15 a.m.—approximately two hours after Fry and Niehaus went to sleep. **See** N.T. Trial, 3/12/18, at 105; 136–37. Additionally, after executing warrants on the Subaru and 1343 Glen Moore Circle, the police recovered several other items belonging to the couple, including their car keys,

computer, iPad, and Niehaus' purse. *Id.* at 119–22. Fry confirmed his and Niehaus' ownership of these items by entering valid passcodes into the devices and showing the police duplicate car keys matching those taken from their house. *Id.* 120–22. The police confirmed Niehaus' ownership of the purse from the checkbook, which had her name on it and was inside the purse. *Id.* at 129.

Taken together, these facts meet the quantum of evidence necessary to allow the jury to infer from possession of stolen goods that Thomas entered Fry and Niehaus' home, and that he did so with the intent to commit theft. *See McFarland*, *supra* at 594 (including time between theft and arrest, and type and kind of property as factors in analysis). Unlike *McFarland*, the facts outlined above, particularly the uniqueness of the items stolen and the proximity in time between theft and arrest, serve to rule out "possibilities of acquisition which do not involve complicity in [] burglary[.]" *Id.* The Commonwealth further demonstrated neither Fry nor Niehaus gave Thomas permission to enter their house or to take their property. N.T. Trial, 3/12/18 at 122; 131. Consequently, Thomas' burglary conviction rests on sufficient evidence. *See Cooper*, *supra* at 666.

Next, Thomas argues the Commonwealth failed to prove he possessed over $2,000 of stolen property—the amount necessary for grading his RSP conviction under count two of docket number CP-36-CR-0000600 as a third-degree felony. Brief of Appellant, at 23. Thomas acknowledges "receiving all

of the property stolen from 15 Susquaw Place which was found in the Subaru he was driving, or the residence at 1343 Glen More Circle." *Id.* at 24. He, however, denies possessing Cauler's guitar, valued at $2,000, without which his RSP conviction would have been graded as a first-degree misdemeanor.[9] *Id.*

RSP is graded as a third-degree felony when the stolen goods at issue are valued at over $2,000, and as a first-degree misdemeanor when the value is between $200 and $2,000. 18 Pa. C.S.A. § 3903(a.1), (b).[10] The Crimes Code defines RSP, in relevant part, as follows:

**§ 3925. Receiving stolen property**

**(a) Offense defined**.--A person is guilty of theft if he intentionally receives, retains, or disposes of movable property of another knowing that it has been stolen, or believing that it has probably been stolen, unless the property is received, retained, or disposed with intent to restore it to the owner.

18 Pa.C.S.A. § 3925; *see also Commonwealth v. Morrissey*, 654 A.2d 1049, 1054 (Pa. 1995) ("[T]he Commonwealth must establish possession of a stolen item and that the possessor knew, or had reason to know, that the item was stolen.").

---

[9] Thomas does not challenge the fact that the guitar was stolen, or its $2,000 valuation. *See* Brief of Appellant, at 25 n.3.

[10] Limited exceptions, delineated in 18 Pa.C.S.A. § 3903(a) and (a.2), are not applicable to the instant case.

The Commonwealth need not prove actual possession, instead being free to establish defendant's receipt, retention, or disposition of stolen property under a theory of constructive possession. *Commonwealth v. Brady*, 560 A.2d 802, 806 (Pa. Super. 1989); *see also Commonwealth v. Davis*, 280 A.2d 119, 121 (Pa. 1971) ("Absent literal possession, a defendant can be said to be in possession of stolen goods only when it is proved that he exercised conscious control or dominion over those goods"). In doing so, the Commonwealth must show the defendant had "the power to control the contraband and the intent to exercise that control." *Commonwealth v. Grekis*, 601 A.2d 1275, 1281 (Pa. Super. 1992); *compare Commonwealth v. Walters*, 378 A.2d 1232, 1235–36 (allowing inference of control over stolen goods where contraband was found near appellant's trailer and appellant was present at trailer during four-day period) *with Commonwealth v. Brady*, 560 A.2d 802 (rejecting inference of control over where appellant was passenger in car he did not own and stolen goods were found in trunk).

At trial, Cauler testified that on January 16, 2018, he drove his son home from guitar lessons, and his son left the guitar at issue in the Subaru. N.T. Trial, 3/12/18, at 72–76. Later that night, the Subaru was stolen. *Id.* at 75. On January 18, 2018, shortly after 1:00 a.m., police apprehended Thomas driving Cauler's Subaru and recovered Cauler's video game controller and phone chargers inside the vehicle. *Id.* at 196–99. Police later discovered

Cauler's iPhone 4, iPhone 6, and iPad inside 1343 Glen Moore Circle, the residence outside of which detectives observed Thomas unloading Fry and Niehaus' television. *Id.* at 187–90. Detectives later discovered Cauler's guitar had been sold to a local Guitar Center by a woman named Bridget Boyer, but the Commonwealth did not offer any evidence connecting Boyer to Thomas, or provide direct evidence of Thomas possessing the guitar. *Id.* at 213.

The jury, acting as the finder of fact, was free to find Thomas not guilty of burglarizing Cauler's home. *See Strafford*, *supra* at 174. The jury was also free to infer from the facts that Thomas intended to exercise conscious dominion over Cauler's guitar, especially under circumstances where Thomas was apprehended in the vehicle where Cauler stored the guitar one day after the Subaru was reported stolen, and he possessed goods stolen from two different homes. *See Walters*, *supra* at 1235–36 (finding constructive possession based on appellant's control over location where stolen goods were stored); *see also Salter*, *supra* at 615 (allowing inferences unless "under the facts of the case there is no rational way the trier [of fact] could make the connection permitted by the inference."). Consequently, we find Thomas' conviction for RSP, graded as a third-degree felony, rests on sufficient evidence; to hold otherwise would afford those dealing in stolen goods a license to possess stolen property so long as he or she managed to find an opportunity to offload ill-gotten property before arrest. *See Walters*, *supra* at 1235–36.

Lastly, Thomas claims his conviction for REAP rests on insufficient evidence, arguing the Commonwealth failed to prove he placed any other person in danger of death or serious bodily injury. Brief of Appellant, at 29.

The Crimes Code defines REAP as follows:

**§ 2705. Recklessly endangering another person**

A person commits a misdemeanor of the second degree if he recklessly engages in conduct which places or may place another person in danger of death or serious bodily injury.

18 Pa.C.S.A. § 2705; *see Commonwealth v. Vogelsong*, 90 A.3d 717, 719 (Pa. Super. 2014) ("[T]o support a conviction, the evidence must establish that the defendant acted recklessly in a manner than endangered another person."). Serious bodily injury is defined as, "[b]odily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." 18 Pa.C.S.A. § 2301.

Consequently, "the Commonwealth must prove that the defendant had an actual present ability to inflict harm and not merely the apparent ability to do so. Danger, not merely the apprehension of danger, must be created." *Commonwealth v. Cianci*, 130 A.3d 780, 782 (Pa. Super. 2015). An individual can recklessly place another in danger of serious bodily injury without consciously attempting to cause serious bodily injury. *See Vogelsong*, *supra* at 720 (affirming REAP conviction where defendant let her horse twice wander unattended onto busy roadway, disregarding risk of injury

to passing motorists). REAP, however, "requires the element of actual danger of death or serious bodily injury." **Cianci**, **supra** at 783.

In the instant case, Thomas argues the Commonwealth failed to elicit any evidence showing that anyone was actually endangered after he abandoned the Subaru. Brief of Appellant, at 31. In response, the Commonwealth argues two separate bases for affirming Thomas' REAP conviction: first, the Commonwealth argues by abandoning the Subaru in gear on Fruitville Pike, Thomas created an unjustified risk of striking another vehicle; second, the Commonwealth argues Thomas ignored the substantial risk faced by the officers who were forced to bring the Subaru to a halt. **See** Brief of Appellee, at 13–14.

In stating its first argument, the Commonwealth admitted "the roadway was not busy" at the time of Thomas' flight from the authorities. Brief of Appellee, at 14. At trial, Officer Donnelly confirmed no other vehicles or pedestrians were present on Fruitville Pike during Thomas' flight. **See** N.T. Trial, 3/12/18, at 172–73. Moreover, Officer Donnelley stated the Subaru never crossed into the lane designated for opposing traffic. **Id.** at 174. Though actual injury is not a requirement in proving REAP, danger to an actual person is a required element. **See Cianci**, **supra** at 783. Thomas' conviction for REAP cannot rest on the danger presented to a potential motorist or pedestrian. **Id.**

In addition to a real individual, a conviction for REAP also requires risk of "death or serious bodily injury." 18 Pa.C.S.A § 2705. The Commonwealth argues Officer Donnelly and Detective Fritz—the two officers who stopped the Subaru—were exposed to the danger of sustaining a serious bodily injury while stopping a vehicle described by Officer Donnelly as "rolling" down an empty road for fifty feet in approximately ten seconds.[11] *See* N.T. Trial, 3/12/18, at 174. Detective Newman, also involved in the chase, described the scene as follows: "Officer Donnelly [attempted] to initiate a traffic stop on [the Subaru]. At that point, the Subaru Forester began to slow down. I'm not sure if came to a complete stop or not, but as the vehicle was slowing down, the driver of the vehicle hopped out[.]" *Id.* at 142. On these facts, we cannot find that the officers were exposed to the danger of death or serious bodily injury while chasing down a car that was rolling so slowly that it was mistaken for being at a complete stop. *See Cianci*, *supra* at 782 (requiring "an actual present ability to inflict harm[.]").

As we cannot find support for the notion that Thomas' actions placed "another person in actual danger of death or serious bodily injury" we are constrained to vacate his conviction for REAP. *Cianci*, *supra* at 782. Here, the trial court imposed his one to two year term of incarceration for REAP to

---

[11] Officer Donnelly's estimates of time and distance would equate to the Subaru traveling at approximately three-and-one-half miles per hour. The unit conversion is as follows: (50 feet / 10 seconds) × (1 mile / 5,280 feet) × (3,600 seconds / 1 hour) = 3.4090909 miles per hour.

be served consecutively to his ten to twenty year term of incarceration for burglary, and concurrently with his three to seven year terms of incarceration for both RSP convictions. Vacating his conviction for REAP will not affect the length of his aggregate term of imprisonment or overall sentencing scheme, making remand unnecessary. *See Commonwealth v. Thur*, 906 A.2d 552, 570 (Pa. Super. 2006) ("[I]f our decision does not alter the overall scheme, there is no need for a remand.").

Judgment of sentence for REAP vacated. Judgment of sentence affirmed for all other counts.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/2/2019