J-A10042-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| MICHAEL ORTIZ | : | |
| | : | |
| Appellant | : | No. 2946 EDA 2023 |

Appeal from the Judgment of Sentence Entered November 3, 2023
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0009586-2021

BEFORE: PANELLA, P.J.E., BECK, J., and FORD ELLIOTT, P.J.E.[*]

MEMORANDUM BY FORD ELLIOTT, P.J.E.: **FILED AUGUST 18, 2025**

Appellant, Michael Ortiz, appeals from the judgment of sentence following his jury convictions of murder of the first degree, carrying a firearm without a license, carrying a firearm on the streets of Philadelphia without a license, and possessing an instrument of crime ("PIC").[1] Appellant raises claims based on the sufficiency and weight of the Commonwealth's evidence, and also on the trial court's exercise of discretion in admitting both a photograph and DNA evidence. We affirm.

We reviewed the trial testimony and agree that the trial court's summary of the facts of the case is accurate:

> The testimony established that on January 28, 2021, decedent Luis Alcazar left his home to meet Appellant for the purpose of

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S. §§ 2502(a), 6106(a)(1), 6108 and 907, respectively.

selling him some marijuana. Mr. Alcazar knew Appellant by the nickname "Coke." The rendezvous was arranged via text messages. Mr. Alcazar told his wife that he was going to meet "Coke" and asked her to put an address into his phone. The location was a short distance away. Mr. Alcazar drove to the agreed location. He called his [fiancée,] and the call ended when he advised her that he had to go because "Coke" was walking up. It was then that Appellant shot Mr. Alcazar three times, fatally wounding him. Mr. Alcazar attempted to flee, but collapsed in the street. As the victim lay dying, Appellant went through his car, before getting into another car and fleeing. Medical personnel arrived about 12 minutes after the shooting, examined Mr. Alcazar[,] and pronounced him dead at the scene.

The police were able to retrieve video of the shooting, showing Mr. Alcazar exiting his vehicle and collapsing, [and] Appellant going through the car and taking a bag. Appellant then left in a distinctive vehicle — a white Chrysler 200, with a black front bumper and left quarter panel. A police officer who is familiar with Appellant testified that in 2020[,] he saw Appellant driving an all-white Chrysler 200, which the officer saw Appellant crash into a fire hydrant[,] damaging the car. When the officer later saw the vehicle on two occasions, being driven by Appellant, it had a black quarter panel. There was also a video call between Appellant and his brother where Appellant shows his brother the car with the black quarter panel.

Through examination of the victim's phone, police were able to obtain Appellant's phone number. They then obtained location information from Appellant's phone provider, which[,] when analyzed by the FBI[,] showed Appellant in the vicinity of the rendezvous location where Mr. Alcazar was killed. Additionally, DNA evidence [was] obtained from … Alcazar's car. A sample from the front passenger door handle of the victim's car was tested[,] and the results were that the sample was from four random unrelated individuals. There were sufficient consistencies between the sample from the car and a reference sample from Appellant to make it likely that he was one of the four sources of the DNA found in the car.

Trial Court Memorandum Opinion, 6/27/24, 2-3 ("Trial Court Opinion").

Trial commenced with *voir dire* on October 16, 2023. The Commonwealth presented its evidence through 13 witnesses over the next three days. The jury began deliberating on the morning of October 20, 2023. It returned with its verdict the same afternoon, finding Appellant guilty of murder of the first degree, carrying a firearm without a license, carrying a firearm on the streets of Philadelphia, and PIC. N.T. Trial, 10/20/23, 40. The court imposed the mandatory term of life imprisonment for murder of the first degree. **Id.**, 44; **see also** 18 Pa.C.S. § 1102(a)(1). On November 3, 2023, the court imposed concurrent terms of imprisonment of 42 to 84 months for the Section 6106 conviction and of 30 to 60 months for each of the Section 6108 and PIC convictions. **See** Amended Sentencing Order, 11/3/23.

Appellant filed a post-sentence motion raising, *inter alia*, a claim that the verdict was against the weight of the evidence because there was "no proof" he possessed the cell phone or that it was registered to him, he could not be identified in the video depicting the murder, and the testimony of Emily Feliciano, who lived with the victim, was not credible. **See** Appellant's Post-Sentence Motions, 10/30/23, 1-2. The court denied the post-sentence motion on November 3, 2023. Trial Court Order, 11/3/23 (denying post-sentence motion for new trial).

On November 17, 2023, Appellant filed a timely notice of appeal. The trial court ordered Appellant to file a statement of errors complained of on appeal. **See** Trial Court Order, 12/21/23; **see also** Pa.R.A.P. 1925(b).

Appellant timely filed a 13-page responsive statement. *See* Appellant's Amended 1925(b) Statement, 1/10/24.

Appellant presents four questions for us to review:

1) Were the verdicts for [all of the convictions] not supported by sufficient evidence? Was the evidence insufficient since there was no eye-witness and further, the video did not show who was involved? Was hearsay evidence improperly used? Was there insufficient evidence that the Appellant even used the nickname "Coke" and was the evidence totally inadequate for the Appellant to be convicted of these crimes? Was the evidence insufficient since DNA evidence was inconclusive and should not have been admitted? …

2) Were the verdicts for [all of the convictions] against the weight of the evidence? Were the verdicts based on pure speculation and conflicting evidence since no gun was recovered and no contraband was found on the Appellant? Should this lack of evidence, inconsistent evidence and speculative evidence shock the conscious of this Honorable Court by the guilty verdicts? Should the convictions be reversed because the verdicts were against the weight of the evidence? Were the verdicts also against the weight of the evidence since DNA evidence was inconclusive and should not have been admitted? …

3) Was there error since the [trial court] allowed DNA evidence that was inconclusive, and which stated there was a mixture of DNA of four people? Did the court err further since the DNA testimony, as the expert noted, was inconclusive and not founded in a scientific basis? Further, did the Commonwealth err in argument that the DNA showed [Appellant] was in the car when the DNA was inconclusive and the conclusion was contrary to the testimony of the expert? Was this error that the District Attorney mentioned the DNA in both the opening and closing statements and there was a timely defense objection in the opening statement? Should a new [t]rial be granted? …

4) Did the [trial court and district attorney] err in presenting during the testimony of Detective Morano a photo of [Appellant] where [Appellant's] name was attached to the photo and there was a dispute that the photo was not of the Appellant? Did the [trial court] err in not granting the timely objections of defense

counsel …? Did the [trial court] err in allowing Detective Morano's testimony and allowing the photo to be presented to the jury with the Appellant's name on it …? Further, did the Court err in allowing Detective Lucke to refer to Exhibit "C-70" which had previously been objected to and which contained the inconclusive DNA …? …

Appellant's Brief, 5-8 (record citations and references to the trial court's suggested answers omitted).

In his first claim, Appellant argues that the evidence was insufficient to sustain his convictions. *See* Appellant's Brief, 23. With respect to his conviction of murder in the first degree, he contends the evidence was insufficient to prove he was the shooter because there were no eyewitnesses or videos that "could identify the shooter with any certainty," and the testimony that the victim said Appellant was coming to meet him along with other testimony identifying Appellant by nickname was unreliable. *Id*., 26-27. "Further, the DNA was inconclusive" and should not have been admitted. *Id.*, 27. With respect to the three possessory offenses – violations of Section 6106, Section 6108, and PIC – he concedes he was not licensed to carry a firearm but contends the fingerprint and DNA evidence were inconclusive; as such, nothing more than "guesswork and speculation" supported the conclusion that he had possessed the gun used to kill the victim. *Id.*, 27-29. He asserts that the evidence presented was "speculative," like that "rejected" by our Supreme Court in *Commonwealth v. Farquharson*, 354 A.2d 545, 550 (Pa. 1976), as "unreliable and/or contradictory." Appellant's Brief, 31.

When reviewing a sufficiency claim, we construe "all the evidence admitted at trial in the light most favorable to the verdict winner[;]" the

evidence is legally sufficient when it would "enable the fact-finder to find every element of the crime beyond a reasonable doubt." ***Commonwealth v. Brockman***, 167 A.3d 29, 38 (Pa. Super. 2017). The Commonwealth may prove an offense by means of wholly circumstantial evidence, and the evidence presented "need not preclude every possibility of innocence." ***Id***. It is the job of the finder of fact to pass upon "the credibility of witnesses and the weight of the evidence produced," and the fact-finder "is free to believe all, part or none of the evidence." ***Id***. In assessing the sufficiency of evidence, we are called upon to consider all the testimony presented during trial, without consideration as to the admissibility of that evidence. ***See Commonwealth v. Smith***, 568 A.2d 600, 603 (Pa. 1989).

"Proof beyond a reasonable doubt of the identity of the accused as the person who committed the crime is essential to a conviction." ***Commonwealth v. Hickman***, 309 A.2d 564, 566 (Pa. 1973). "[G]uilt must be based on facts and conditions proved, and not on suspicion or surmise." ***Commonwealth v. Eckrote***, 12 A.3d 383, 386 (Pa. Super. 2010). "However, entirely circumstantial evidence is sufficient so long as the combination of the evidence links the accused to the crime beyond a reasonable doubt." ***Id.***

Here, the trial court acknowledged the correct standard of review and noted that "a conviction may stand on circumstantial evidence" and that "[r]esolving conflicts in the testimony is an 'appropriate jury function.'" It then concluded that:

the evidence placed Appellant at the scene through the present sense impression of the victim, text messages, the phone location evidence, his distinctive car being seen in the video and identified through prior encounters with police, DNA establishing a high likelihood he was in the victim's car, and video evidence of the events. Taken together this evidence, when viewed in the light most favorable to the Commonwealth as the verdict winner, was sufficient to prove Appellant guilty as to each of the charges, beyond a reasonable doubt.

Trial Court Opinion, 5-6 (citations omitted).

We have closely reviewed the evidence and conclude that contrary to Appellant's assertion, *see* Appellant's Brief, 26-29, the trial evidence was sufficient to prove he was the gunman who shot and killed the victim. Even though the evidence presented was predominantly circumstantial, each strand interlocked with others and with witness testimony, all of which placed Appellant in the victim's car at the exact same time the video depicts the victim being shot and killed. *See Brockman*, 167 A.3d at 38 (all of the evidence viewed in the light most favorable to Commonwealth must be considered on sufficiency review).

The victim's fiancée, who lived with the victim and was the mother of his child, testified she knew Appellant by the nickname of "Coke," and positively identified him in court. N.T. Trial, 10/17/23, 52-53, 55-56. She further testified that in the early morning hours to feed their baby, the victim read a text he had received and told her he was going out to meet "Coke." *Id.*, 54-56. After leaving, the victim called his fiancée but soon thereafter ended the call saying, he would "call back[,] as Coke was walking up to the car." *Id.*, 57. He never called back. *Id.*, 59. Around 4:15 a.m., in response to

- 7 -

a police dispatch concerning a person with a gun, an officer arrived at the 5700 block of Walker Street to find the victim dead, with three gunshot wounds, laying in the street next to his silver Chevy Blazer with the engine still running. *Id.*, 40-47.

The Commonwealth also presented evidence that Appellant drove a white Chrysler 200 with a black front bumper and left front quarter panel, the result of damage during a prior police pursuit. *See* N.T. Trial, 10/17/23, 159-179. Photographs of the same car were posted on an Instagram account with the login name of "4poundcoke21." N.T. 10/18/23, 54-60, 161, 168-169, 174. Detectives ascertained that the phone number associated with the Instagram account was assigned to a phone Appellant owned. *Id.*, 50-51. From phone calls recorded by the prison, it was clear that Appellant preferred to use the nickname "Coke," and in a FaceTime call with his brother recorded by the prison system, Appellant showed his brother a photo of the white Chrysler 200 with a black bumper and front left quarter panel. *Id.*, 68-69; N.T. Trial, 10/19/23, 64-65.

Video acquired from security cameras in the area where the victim was slain depicted the white Chrysler 200 with a black bumper and front left quarter panel driving to the area and parking on Erdick Street, one block from Walker Street at 3:46 a.m. *See* N.T. 10/19/23, 46-51. It remained there until 3:57 a.m. *Id.*, 62. In between those points in time, the driver of the car exited. *See id.*, 50-51. The only person depicted on the street at that time was on Van Kirk Street walking towards Walker Street from the direction of Erdick

Street where the Chrysler 200 was parked, before turning onto the 5700 block of Walker Street. *Id.*, 52-58. Video also captured the victim's Chevy Blazer arriving and parking in the 5700 block of Walker Street at 3:30 a.m., or about 20 minutes before the person walking from Erdick Street arrived. *Id*., 56-57. The person walking on the street approached the victim's Chevy Blazer and entered the passenger side at about 3:51 a.m. *See id.*, 57-59. A few minutes later, the person in the passenger seat exited and ran towards Cheltenham Avenue, where he then began walking towards Erdick Street, then onto Erdick to the parked white Chrysler 200, before driving away from the area at 3:57 a.m. *Id.*, 59-62. Meanwhile, the victim exited the driver's seat and collapsed to the ground with three gunshot wounds to the right side of his body. *Id.*, 59-60; N.T. Trial, 10/17/23, 145-149.

The Commonwealth also introduced text communications to and from the victim's phone and a TracFone (a wireless prepaid phone with no subscriber information) that were consistent with the victim's intention to meet with Appellant.[2] Prior to the victim leaving his home, the TracFone was

_____

[2] In addition, the evidence demonstrated that the overwhelming number of communications to the victim's phone from 9:15 p.m. on January 27, 2021, through to the time of the murder and until his fiancée tried to call him at 4:21 a.m. on January 28, 2021, were from the TracFone. *See* N.T. 10/19/23, Trial, 19-31; Ex. C-70. Of the 24 total communications, all but two involved the TracFone. *See* N.T. Trial, 10/19/23, 19, 24; Ex. C-70. Of the 22 calls and text messages involving the TracFone and the victim's phone, most originated from the TracFone while a minority were return calls or text messages from the victim's phone. *See* N.T. Trial, 10/19/23, 25-31; Ex. C-70. This evidence demonstrated the urgency the user of the TracFone had to meet with the victim.

used to send multiple messages about meeting with the victim and where the victim should go to meet Appellant. *See* N.T. Trial, 10/19/23, 26-28. At 3:15 a.m., the victim texted the TracFone, "I'm on my way." *Id.*, 29. At 3:17 a.m., when the victim's Chevy Blazer arrived on Walker Street as depicted on video, he texted, "I'm outside." *Id.*, 29, 32 56. Then the victim called the TracFone and spoke for 20 seconds, followed by a call that likely went to voice mail at 3:46 a.m. *Id.*, 30. At 4:21 a.m., the victim's fiancée called his cellphone, but the call went to voicemail. *Id.*, 31. Historical cell site information showed that the TracFone moved away from the Juniata area of Philadelphia at 3:10 a.m., while it was connected to a phone call with the victim's phone. *Id.*, 114. It arrived in the area including the 5700 block of Walker Street by 3:31 a.m. and was in back-and-forth communication with the victim's phone. *Id.*, 115-116. After 3:58 a.m., the TracFone was turned off. *Id.*, 116.

Thus, the evidence, viewed in the light most favorable to the Commonwealth, proved the victim stated his intention to meet with Appellant, at Appellant's request, and saw Appellant on the street walking to him, as he told his fiancée on the phone, shortly before he was shot and killed. In addition, the person who shot and killed the victim drove Appellant's car to the area while texting back and forth with the victim, consistent with their arranged plan to meet, before shooting him and fleeing in Appellant's car. This string of connecting evidence is sufficient to sustain Appellant's convictions for murder of the first degree and for both illegally possessing, and possessing with criminal intent, a firearm.

Appellant's reliance on **Farquharson** is misplaced because the video and telephone evidence presented in this case supports the trustworthiness and accuracy of the testimonial evidence, confirming Appellant killed the victim. **Cf. Farquharson**, 345 A.2d at 551 (stating that biased and contradictory testimony from a co-conspirator alone might not "provide the degree of certainty" necessary to sustain a conviction, but even such questionable evidence where corroborated by other evidence may do so); **see also Commonwealth v. DeJesus**, 860 A.2d 102, 107 (Pa. 2004) (distinguishing **Farquharson** and stating "jury was free to weigh and reject the questions trial counsel raised" about the evidence). Therefore, we conclude the evidence was sufficient to sustain Appellant's convictions.

In his second issue, Appellant argues that the weight of the evidence was contrary to his conviction. **See** Appellant's Brief, 32. Appellant contends that the "verdicts should shock the consci[ence] of this Court" as they were "not based on any solid or firm evidence, but only the product of questionable and speculative evidence." **Id.**, 33. He argues that there was no evidence to conclude that the person nicknamed "Coke" was Appellant. **Id.**, 34. He points out that no fingerprints were recovered and only inconclusive DNA evidence was provided to prove he was inside the victim's car. He also contends that although the historical cell site analysis places "[his] cellphone in the vicinity" at the time of the murder, it "was guesswork as to who had the phone." **Id.**, 34. He asserts that the lack of eyewitness or other definitive evidence of his guilt outweighs the "speculative evidence" presented by the Commonwealth.

*Id.*, 35. Because the "verdicts are so contrary to any firm evidence to demonstrate that [Appellant] shot and killed" the victim, he requests this Court to "discharge this case after reversing the convictions since the verdicts were clearly against the weight of the evidence." *Id.*, 36.

Our standard of review of the denial of a weight claim by a trial court is to examine "the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence." *Commonwealth v. Clay*, 64 A.3d 1049, 1055 (Pa. 2013) (quoting *Commonwealth v. Widmer*, 744 A.2d 745, 753 (Pa. Super. 2000). In a post-sentence motion, a weight claim "is addressed to the discretion of the trial court." *Widmer*, 744 A.2d at 751. "In order for a defendant to prevail on a challenge to the weight of the evidence, 'the evidence must be so tenuous, vague and uncertain that the verdict shocks the conscience of the court.'" *Commonwealth v. Talbert*, 129 A.3d 536, 546 (Pa. Super. 2015) (quoting *Commonwealth v. Sullivan*, 820 A.2d 795, 806 (Pa. Super. 2003)). A trial court's denial of a motion "based on a weight of the evidence claim is the least assailable of its rulings." *Commonwealth v. Diggs*, 949 A.2d 873, 880 (Pa. 2008).

"An appellate court's standard of review when presented with a weight of the evidence claim is distinct from the standard of review applied by the trial court." *Clay*, 64 A.3d at 1055. This Court must limit review to "whether the trial court abused its discretion by reaching a manifestly unreasonable judgment, misapplying the law, or basing its decision on partiality, prejudice, bias, or ill-will." *Id.* at 1056. "A true weight of the evidence challenge

concedes that sufficient evidence exists to sustain the verdict but questions which evidence is to be believed." ***Commonwealth v. Charlton***, 902 A.2d 554, 561 (Pa. Super. 2006) (quoting ***Commonwealth v. Galindes***, 786 A.2d 1004, 1013 (Pa. Super. 2001)). Moreover, the relief for a meritorious weight claim is a new trial, not discharge. ***See Commonwealth v. Taylor***, 471 A.2d 1228, 1229–1230 (Pa. Super. 1984) (discussing in depth the differences between sufficiency and weight claims, including the type of relief applicable to each).

The trial court explained its reasons for denying Appellant's post-sentence motion seeking a new trial based on the weight of the evidence, as follows:

> Here, Appellant asserts essentially the same argument as he does to the sufficiency, that the evidence of his guilt is speculative. Having observed the testimony and viewed the evidence, the court's conscience is not the least bit shocked by the verdict. To the contrary, the weight of the direct and circumstantial evidence of Appellant's guilt was overwhelming.

Trial Court Opinion, 7.

Having reviewed the record ourselves, we find no abuse of discretion by the trial court. ***See Commonwealth v. Rice***, 902 A.2d 542, 547 (Pa. Super. 2006) (where trial court's "conclusions are logical and supported by evidence of record" then it "did not commit a palpable abuse of discretion" by rejecting a weight claim). As explained above in response to Appellant's sufficiency argument, there was ample evidence, direct, circumstantial, photographic,

telephonic, and corroborative to support the jury's findings that Appellant was the shooter who killed the victim and thereby illegally possessed a handgun.

Moreover, Appellant's reliance on the lack of certain evidence such as an eyewitness to the murder itself or a video on which he could be clearly identified as the shooter, does not, in his words, show that the "wrong person has been convicted." Appellant's Brief, 34-35. Appellant essentially asks this Court to substitute our evaluation of the quality of evidence for that of both the jury and the trial court, which we cannot do. It would be reversible error for this Court to "step[] into the shoes of the trial judge and revisit[] the underlying question of whether the verdict was against the weight of the evidence." *Clay*, 64 A.3d at 1056. *See also Commonwealth v. Chine*, 40 A.3d 1239, 1244 (Pa. Super. 2012) ("[a]s it is not the role of an appellate court to reweigh the evidence, we will not disturb the jury's credibility determinations"). Based on our review, all the alleged weaknesses in the evidence were brought to the attention of the jury, which as the fact-finder was the final arbiter of credibility and weight. *See Commonwealth v. Small*, 741 A.2d 666, 673 (Pa. 1999) (where "all of the matters complained of by appellant … were issues argued by appellant's counsel during trial and were properly weighed and rejected by the jury before it reached its verdict" then appellate weight claim fails). Accordingly, we hold that the trial court did not abuse its discretion by denying a new trial.

Appellant presents his third and fourth claims in one section of his appellate brief.[3] At the outset, he concedes "there was no objection to the inconclusive DNA being testified to and the use of the comparative ratio." Appellant's Brief, 36-37. Appellant then argues that the trial court erroneously overruled an objection to a photograph that had his name on it. *Id.*, 38. Appellant states, "the defense objected since this was an alleged photograph of [Appellant] which the defense disputed that it was even" of Appellant. *Id.* He explicitly contends that the court's ruling was "a terrible error since there was a dispute that [Appellant's name] should not have been on the photograph shown to the jury when there was a dispute if that was [a] photo" of Appellant. *Id.* Although counsel elicited on cross-examination that the label including Appellant's name was an identifier placed by the police and not from information drawn from the source of the photograph, Appellant nonetheless asserts he was prejudiced because the label "presented to the jury … the police conclusion as to the identity." *Id.*, 39. Appellant requests a new trial and arrest of judgment. *Id.*, 41.

_____

[3] We note that Appellant's brief violates the Pennsylvania Rules of Appellate Procedure insofar as it presents four questions to be argued, but only contains three argument sections. *See* Pa.R.A.P. 2119(a) ("The argument shall be divided into as many parts as there are questions to be argued; and shall have at the head of each part—in distinctive type or in type distinctively displayed— the particular point treated therein, followed by such discussion and citation of authorities as are deemed pertinent."). Nevertheless, as Appellant concedes he is not entitled to relief on issue three, the violation has not impeded our review.

Generally, "[q]uestions concerning the admissibility of evidence lie within the sound discretion of the trial court, and a reviewing court will not reverse the court's decision on such a question absent a clear abuse of discretion." **Commonwealth v. Crosley**, 180 A.3d 761, 768 (Pa. Super. 2018) (citation omitted). "An abuse of discretion may not be found merely because an appellate court might have reached a different conclusion, but requires a result of manifest unreasonableness, or partiality, prejudice, bias or ill-will, or such lack of support so as to be clearly erroneous." **Crosley**, 180 A.3d at 768; **see also Commonwealth v. DiStefano**, 265 A.3d 290, 297 (Pa. 2021) (appellant cannot meet heavy burden of establishing abuse of discretion by simply persuading appellate court that it may have reached different conclusion than trial court).

As to the admissibility of evidence at trial:

> All relevant evidence is admissible, except as otherwise provided by law. Evidence that is not relevant is not admissible. Evidence is relevant if it logically tends to establish a material fact in the case or tends to support a reasonable inference regarding a material fact. Even if evidence is relevant, the court may nonetheless exclude it if its probative value is outweighed by a danger of unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.

**Commonwealth v. Gross**, 241 A.3d 413, 418-19 (Pa. Super. 2020) (citations and quotation marks omitted).

"In order to preserve a challenge to an evidentiary ruling, a litigant must make a timely and specific objection to the court's ruling." **Commonwealth v. Pacheco**, 227 A.3d 358, 373 (Pa. Super. 2020) (listing cases). Additionally,

- 16 -

an appellant is confined to the specific objections made at trial and may not object on a different basis post-trial. ***See Commonwealth v. Bedford***, 50 A.3d 707, 713–14 (Pa. Super. 2012) (*en banc*); ***see also Commonwealth v. Santiago-Burgos***, 314 A.3d 535, 544-545 (Pa. Super. 2024).

With respect to Appellant's claim that the trial court erred by permitting allegedly inconclusive DNA analysis to be presented to the jury through the testimony of an expert witness, ***see*** N.T. Trial, 10/18/23, 100-123, he concedes in his brief that he did not object to the DNA evidence in the trial court. ***See*** Appellant's Brief, 36-37. Accordingly, we will not address this question. ***Pacheco***, 227 A.3d at 373.

With respect to Appellant's claim that the trial court abused its discretion by admitting a photograph contained in an exhibit, there were two elements to the objection made by counsel at trial. The exhibit in question, C-70, "was information extracted from [the victim's] cell phone," and presented as "an analysis of" that information. Trial Court Opinion, 7-8. That exhibit served as "a demonstrative slide prepared by [the Commonwealth's phone forensics expert] to illustrate the Commonwealth's theory of the evidence linking Appellant to the communications with" the victim. ***Id.***, 8. Appellant objected because the exhibit had a tag with "the phone number the Commonwealth claimed was tied to Appellant … labeled with his name." ***Id.*** (citing N.T. Trial, 10/18/23, 91-94). He also objected that "there [was] no proof that that photo [was] attributed to [Appellant, and] to have it displayed to the jury … would

assume … a fact not in evidence [that is] completely unduly prejudicial." N.T. Trial, 10/18/23, 92.

Appellant limits his argument in this appeal to an alleged photograph included in Exhibit C-70 supposedly tagged in a manner the jury might understand as identifying the alleged photograph as being of him. We note that Appellant's objection at trial to Exhibit C-70 did refer to a "photo." **See** N.T. Trial, 10/18/21, 91-92. Appellant specifically argued that the tag's attribution to him "might be legitimate argument, but there is no proof that the photo is attributed to" him, and "would assume a fact not in evidence." **Id.**, 92. Our review of Exhibit C-70, however, confirms that the only pages with the objected-to tag are pages five and six of the exhibit. However, the only photograph on those pages are the "slides" constituting pages five and six of Exhibit C-70. **See** Ex. C-70, 5-6. We therefore interpret Appellant's objection to a "photo" before the trial court to be to those two pages or slides even though there is no photograph. On pages five and six of the exhibit, there is only the "voice and text" information from Appellant's phone for the specified time period. **See id.**

There is no recognizable photograph depicted on pages five and six, much less a photograph of a person that may or may not be Appellant. Moreover, there is no photograph depicted on page four (and no tag); only a summary of the content of all the data extracted from the victim's phone is provided. On page three of the exhibit there is a photo (but no tag) of the serial number and other identification codes for the victim's phone. On page

two, there are three photographs of the victim's phone (and no tag): (1) the front of the phone and its main screen; (2) the back of the phone with a sticker with the serial number and other identification on it; and (3) a close-up of the sticker. Page one is a title page for the exhibit. **See** Ex. C-70.

As Appellant specifically objected to a "photo" in the exhibit before the trial court, we do not find Appellant's present challenge to the admission of an improperly tagged photograph to be waived; it is, however, entirely misdirected. The tag to which he objected is in Exhibit C-70, but the photograph is not. The claim of error on appeal is therefore without merit because there was no photograph purporting to be of Appellant in the exhibit. Moreover, by focusing on a non-existent photograph, Appellant abandoned any argument concerning the greater import of Exhibit C-70, and in particular pages five and six, which was to demonstrate the overwhelming amount of communication between the victim's cellphone and a TracFone with no subscriber information carried by the person driving Appellant's car at 3:30 a.m. and walking to the victim's car before shooting and killing him. **See** N.T. Trial, 10/19/23, 17-63 (Commonwealth's phone forensic and video recovery expert testifying to the digital data acquired and analyzed during the investigation).[4]

_____

[4] "We shall not develop an argument for an appellant, nor shall we scour the record to find evidence to support an argument[.]" **Milby v. Pote**, 189 A.3d 1065, 1079 (Pa. Super. 2018). To do so would place this Court "in the conflicting roles of advocate and neutral arbiter." **Commonwealth v.**
*(Footnote Continued Next Page)*

Exhibit C-70 was a presentation by the phone forensics expert, who reviewed the data recovered from the victim's phone.[5] The two pages of the exhibit with the tag "Communications with (267) 896-5649 (Michael Oritz)," which was the explicit basis for Appellant's objection, were pages five and six of the exhibit. Those pages depicted, in chronological order, the duration of phone calls and the content of text messages to and from the victim's phone from 9:15 p.m. on January 27 to 4:30 a.m. on January 28, 2021, along with other information about those communications. ***See*** N.T. Trial, 10/19/23, 13-14, 18-19, 22-23; Ex. C-70, 5-6. Of the 24 total communications, all but two were from the TracFone with the number (267) 896-5649. ***Id.***, 19, 24. Of the 22 calls and texts with the 5649 number, most were from the TracFone with a minority being calls or texts from the victim's phone. ***See id.***, 25-31.

The trial court explained its ruling denying Appellant's trial objection, as follows:

_____

***Williams***, 782 A.2d 517, 532 (Pa. 2001) (Castille, J., concurring). Therefore, when an appellant fails to develop an issue in an argument, the issue is waived. ***See Sephakis v. Pa. State Police Bureau of Records and Id.***, 214 A.3d 680, 686-87 (Pa. Super. 2019).

[5] The exhibit was a visual compilation of the documentary evidence recovered from the victim's cellphone, properly authenticated by the phone forensics expert. ***See*** N.T. Trial, 10/19/23, 12-17; ***see also*** Pa.R.E. 901(a) ("proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is"); Pa.R.E. 901(b)(1) (testimony of a witness with knowledge or circumstantial evidence may be used to authenticate). The exhibit was therefore admissible. Pa.R.E. 901(b)(11) (authentication of digital evidence may be accomplished by testimony of a person with personal knowledge or circumstantial evidence).

> Here, the evidence, in context did not prejudice Appellant. Indeed, Appellant's counsel's cross-examination clearly developed that the labeling of the phone number as that of Appellant on pages 5 and 6 was not from any information extracted from the phone, but was based on information provided to [the phone forensics expert] by the investigating detective. There was no prejudice to Appellant as it was clear through the testimony that the labeling was part of the demonstrative slide, and not the result of evidence extracted from the phone.

Trial Court Opinion, 8-9 (citation to the record omitted).

Indeed, when making his objection, Appellant stated: "We just covered that on cross-examination, and it was even touched on direct, that there is no subscriber information for that phone." N.T. Trial, 10/18/21, 91-92 (referring to direct testimony of the lead investigator, *id.*, 43-45, and cross-examination, *id.*, 77). In response, the prosecutor argued that the totality of the evidence supports the inference that the TracFone with no subscriber information was owned by Appellant: the evidence proving the white Chrysler was Appellant's car and near the murder scene; that the TracFone was in the same area at the same time as the car and left at the same time; and the text messages matched up with what was depicted on video; and the testimony that the victim was communicating with Appellant. ***See id.***, 92-93. The trial court overruled the objection because the record evidence showed there was no subscriber information for the phone; thus the jury was aware of the issue, and the exhibit was proffered as a visual aid compilation of the phone forensic expert's analysis. ***See id.***, 93-95. Appellant did not object when Exhibit C-70 was offered into evidence. ***See*** N.T. Trial, 10/19/23, 13.

- 21 -

While the calls and texts documented in the exhibit were definitely from the TracFone, neither the lead investigator nor the forensic phone expert testified that they were conclusively made by Appellant. Rather, the lead investigator described the TracFone as having no subscriber information, N.T. Trial, 10/18/21, 43-45, 77, and the expert testified the number for the TracFone was not associated with any of the contacts in the victim's phone. *See id.*, 22-31. The expert also showed the jury that the text from the victim, "I'm outside" was sent to the TracFone when the victim arrived on Walker Street and parked. *Id.*, 32-33. The timing supported the inference that the TracFone was associated with the person the victim arranged to meet. The Commonwealth's evidence clearly left it to the jury to decide whether the inference that Appellant was using the TracFone at the time of the murder should be made, as is the jury's proper function as the factfinder. *See Commonwealth v. Shaffer*, 288 A.2d 727, 735-736 (Pa. 1972) (an "inference is no more than a logical tool enabling the trier of fact to proceed from one fact to another, if the trier believes that the weight of the evidence and the experiential accuracy of the inference warrant so doing"). "Inasmuch as the trier of fact may either accept or reject the inference, the question of whether the elemental fact is properly inferred from the basic fact rests on the connection between the facts in the context of an evidentiary record, not on an analysis of the relationship between the facts in the abstract." *Commonwealth v. Salter*, 858 A.2d 610, 615 (Pa. Super. 2004) (quoting *Commonwealth v. MacPherson*, 752 A.2d 384, 390 (Pa. 2000)). We agree

with the trial court that, in light of the properly admitted evidence that established the label was not information derived from the phone, the objected-to portion of the properly admitted exhibit did not usurp the jury's function nor unduly prejudice Appellant.

Accordingly, we affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 8/18/2025